**UNITED STATES of America, Plaintiff–Appellee, Cross–Appellant,**

**v.**

**Bruce R. BLACK, Defendant–Appellant, Cross–Appellee.**

Nos. 96–3497, 96–3772.

United States Court of Appeals, Seventh Circuit.

Argued April 18, 1997.

Decided June 9, 1997.

---

Colin S. Bruce (argued), Office of the United States Attorney, Urbana Division, Urbana, IL, for Plaintiff-Appellee.

John H. Bisbee (argued), Macomb, IL, for Defendant-Appellant.

Before CUMMINGS, MANION and DIANE P. WOOD, Circuit Judges.

CUMMINGS, Circuit Judge.

Defendant Bruce R. Black was charged in a nine-count indictment with distribution, receipt and possession of child pornography in violation of 18 U.S.C. § 2252(a)(2) and (4).[1] Black's motion to dismiss was denied after an evidentiary hearing, and the parties thereafter entered into three stipulations described *infra.* Black entered a conditional guilty plea, reserving the right to appeal the denial of his motion to dismiss. Black was sentenced to 18 months' imprisonment plus three years of supervised release, and his computer equipment was declared forfeited.

---

**1.** Counts 1 and 5 referred to the defendant's distribution of visual depictions of minors engaging in sexually explicit conduct that had been transported in interstate commerce. Counts 2, 3, 4, 6, 7 and 8 involved the defendant's receipt by computer of visual depictions transported in interstate commerce showing minors engaging in sexually explicit conduct. All eight of these counts alleged violations of 18 U.S.C. § 2252(a)(2). Count 9 charged that defendant possessed depictions which had been transported in interstate commerce and involved the use of a minor engaging in sexually explicit conduct. 18 U.S.C. § 2252(a)(4)(B). Finally, the indictment requested forfeiture of Black's personal computer equipment pursuant to 18 U.S.C. § 2253.

*Facts*

After receiving information from a private citizen, the Federal Bureau of Investigation looked into the transmission of child pornography by computer through America Online (AOL), a commercial computer service located in Vienna, Virginia. Its electronic message bulletin board enables subscribers to send messages to each other and attach files containing pictures. A grand jury subpoena was served on AOL for its records associated with a user who identified himself on the bulletin board as "B FOX 332." AOL's records revealed that the account belonged to Bruce Black. At the time, Black was living in an apartment in Champaign, Illinois, and was employed by the Prairielands Counsel of the Boy Scouts of America.

A search warrant was executed on AOL, yielding subscriber information and detailed billing records for defendant's account, which had been activated 146 times from January 1, 1995 to June 16, 1995. The records revealed both distribution and receipt of files by defendant. On five occasions he was the originator of several child pornography files on to the AOL system (*i.e.*, he was the AOL subscriber who first "uploaded" the image on to the system), on six other occasions he received such files, and on two other occasions he distributed such files by forwarding the images he received to another AOL subscriber.

In August 1995, FBI agents went to Black's apartment to execute their search warrant, but Black himself consented to the search, which resulted in the seizure of seven three-ring binders containing numerous printed photographs of child pornography showing minors engaging in sexually explicit acts. Besides the binders in his bedroom, the FBI agents found a personal computer system with a printer and 350 computer diskettes. A Board-certified pediatrician, Dr. Kathleen Buetow, examined some of the pictures of male children found in Black's residence and stated that 20 of the 40 images she reviewed were of pre-pubescent children.

Black consented to be interviewed by the FBI agents and admitted that he owned the personal computer system, was a subscriber to AOL and ordinarily used the screen name B FOX 332. He admitted that he regularly received and occasionally disseminated images via computer depicting children in sexually explicit conduct. He referred to this material as "child pornography" or "kiddie porn" and said he had retained everything he received and kept most of it in the ring binder albums stored in his bedroom.

Black's motion to dismiss the indictment was denied and at another hearing regarding subsequent motions, Black stated that he was not offering an insanity defense under 18 U.S.C. § 17.

On June 3, 1996, the government and Black entered into three stipulations. The first agreed that Black "was a pedophile and/or ephebophile [sexually attracted to young men]" and that "the receipt, collection and distribution of child pornography was a pathological symptom of the defendant's pedophilia and/or ephebophilia." The second was that Black "did not receive, collect or distribute child pornography for commercial purposes or monetary gain" and that he "did not trade child pornography on a numerically equal basis with other individuals who received, collected or distributed child pornography." The third provided that "the graphic images of child pornography charged in the indictment were received or distributed by the defendant ... [and had] traveled in interstate commerce." On the same date, the parties entered into a plea agreement under which the defendant entered a plea of guilty to all nine counts of the indictment.

At the subsequent sentencing hearing, the government sought a five-point increase in Black's offense level pursuant to Sentencing Guideline § 2G2.2(b)(2) due to his distribution of child pornography. Black objected to the enhancement, and the district court agreed that it should not apply because of the absence of pecuniary gain. Thereafter Black was sentenced to 18 months' imprisonment plus three years of supervised release.

### I. Black's prosecution was not in violation of the Eighth Amendment

■ Black argues that his prosecution under 18 U.S.C. § 2252 is unconstitutional under the Eighth Amendment because he is a

pedophile or ephebophile. Relying on *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758 (striking down as unconstitutional a California statute criminalizing the status of being addicted to narcotics), and Justice White's concurrence in *Powell v. Texas*, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254 (1968), Black maintains that he has been convicted based on his status as a pedophile or ephebophile. However, the indictment does not criminalize him in that capacity but simply charges him for his conduct of receiving, possessing and distributing child pornography that traveled in interstate commerce. Thus *Robinson* is simply inapposite on its face because the statutes involved here do not criminalize the statuses of pedophile or ephebophile.

Black is not raising an insanity defense under 18 U.S.C. § 17 but claims that he is immune from prosecution under 18 U.S.C. § 2252 because as a pedophile or ephebophile he is compelled to collect, receive and distribute child pornography. A similar argument was rejected with respect to public intoxication in *Powell v. Texas*, 392 U.S. 514, 88 S.Ct. 2145, 20 L.Ed.2d 1254. In *Powell*, the defendant argued that under the Court's decision in *Robinson v. California*, 370 U.S. 660, 82 S.Ct. 1417, 8 L.Ed.2d 758, his conviction for public intoxication was barred by the Eighth Amendment because it effectively criminalized his status as a chronic alcoholic. A majority of the justices concluded that *Robinson* did not control the outcome of the case because Powell was subject to criminal sanctions "not for being a chronic alcoholic, but for being in public while drunk on a particular occasion." 392 U.S. at 532, 88 S.Ct. at 2154; see also *id.* at 553–554, 88 S.Ct. at 2164–2165 ("Powell showed nothing more than that he was to some degree compelled to drink and that he was drunk at the time of his arrest. He made no showing that he was unable to stay off the streets on the night in question.") (White, J., concurring).[2] Similarly, although Black may have shown— indeed it is stipulated—that he is a pedophile and/or ephebophile and that his receipt, distribution and possession of child pornography "was a pathological symptom of [his] pedo-

philia and/or ephebophilia," he did not show that this charged conduct was involuntary or uncontrollable. Indeed, various of the psychological reports contained in the record indicate that defendant could control his impulses to access child pornography. In particular, a summary report prepared by the government's expert, following a 4 3/4-hour interview with defendant notes,

Statements made by Mr. Black in the course of his evaluation indicate that he was able to appreciate the nature and quality and the wrongfulness of his acts, relative to involvement with child pornography. History provided by Mr. Black also indicates that he did not suffer a reduced mental capacity from the presence of a mental disorder that interfered with his knowingly, purposely, and voluntarily committing the alleged offenses. History provided by Mr. Black also indicates he was able to resist sexually deviant urges and impulses related to his involvement in the child pornography activities.

Another report indicates that Black confined his computer access to child pornography to periods when his roommate was away from the apartment. Simply put, Black did not show that his child pornography offenses were involuntary and uncontrollable because he is a pedophile or ephebophile. We note in this regard that we have carefully reviewed all of the psychiatric and psychological literature excerpts that Black has submitted to the Court and find no basis in this literature for concluding that Black's charged conduct was involuntary or otherwise uncontrollable.

## II.  Court's rejection of request for a downward departure

■ Defendant claims that the district court committed error in rejecting his request for a downward departure under the application of U.S.S.G. § 5K2.0 (other grounds for departure) or § 5K2.13 (diminished capacity). Unlike *United States v. Gifford*, 17 F.3d 462 (1st Cir.1994) (remanding for resentencing where district court apparently harbored the mistaken impression that it lacked legal authority to depart from

---

**2.**  Defendant's principal reliance is on the concurring opinion of Justice White in *Powell v. Texas*.

However, since no other Justice joined in that opinion, it need not be discussed further.

guideline range), the court did consider Black's arguments for a downward departure and rejected them (R. 56) and its decision not to depart is unreviewable. *United States v. Prevatte,* 66 F.3d 840, 843 (7th Cir.1995).

Black relies upon *United States v. Barton,* 76 F.3d 499 (2d Cir.1996), but there the Second Circuit reversed the district court's granting of downward departures based upon the defendant's mental and emotional condition. Here the district judge was fully aware of defendant's mental condition and efforts toward rehabilitation. Furthermore, the record as a whole shows that the judge knew he had the discretion to depart on the basis of that mental condition, notwithstanding his isolated comment in the order of September 17, 1996, in which he said that "mental and emotional conditions ... are not appropriate reasons for departure," and cited U.S.S.G. § 5H1.3. That section of the Guidelines confirms that mental and emotional condition is indeed not ordinarily relevant. Here, the remainder of the order went on to discuss why Black was not atypical and thus did not deserve the departure. The court's oral comments at sentencing further underscore the point that he knew he had discretion to depart, but that he believed a departure was unwarranted. In these circumstances, the judge was entitled to exercise his discretion and to reject the request for downward departures. See *Barton,* 76 F.3d at 502.

### III. *Rule of lenity is no bar*

Black also contends that the rule of lenity bars his prosecution under 18 U.S.C. § 2252. However, no grievous ambiguity or uncertainty has been shown in the statute involved here, so that the rule of lenity is inapplicable. *Chapman v. United States,* 500 U.S. 453, 463, 111 S.Ct. 1919, 1926, 114 L.Ed.2d 524. Since 1984, a commercial motivation element was eliminated from the statute (98 Stat. 204). As we held in *United States v. Andersson,* 803 F.2d 903, 906 (1986), certiorari denied, 479 U.S. 1069, 107 S.Ct. 962, 93 L.Ed.2d 1010 18 U.S.C. § 2252 "extends to any mailing or receipt of pornographic literature involving children: commercial or non-commercial, public or private." *New York v. Ferber,* 458 U.S. 747,

758–759, 102 S.Ct. 3348, 3355, 73 L.Ed.2d 1113, noted that broad legislative enactment was necessary to prevent child abuse. Furthermore, § 2252 now expressly includes distribution "by any means including by computer," and it does not incorporate special limitations on computer distribution. Defendant has not shown that this statutory language is ambiguous or requires proof of a commercial motivation. *Malloy v. Eichler,* 860 F.2d 1179, 1183 (3d Cir.1988). Congress wished to cover distribution by individuals even if by gift or exchange. *United States v. Andersson,* 803 F.2d at 906. It is no defense that Black may have had a personal opinion about the legality of sexually explicit videos. *United States v. Knox,* 32 F.3d 733, 754 (3d Cir.1994), certiorari denied, 513 U.S. 1109, 115 S.Ct. 897, 130 L.Ed.2d 782; see *United States v. Moncini,* 882 F.2d 401, 404 (9th Cir.1989).

### IV. *District court's refusal to enhance Black's sentence under U.S.S.G. § 2G2.2(b)(2)*

The government complains that the district judge should have accepted its recommendation and that of the reporting probation officer that the five-level enhancement prescribed in U.S.S.G. § 2G2.2(b)(2) be imposed. According to the government, the word "distribution" used in § 2G2.2(b)(2) should be interpreted in accordance with Application Note 1 to that guideline, which says that "[d]istribution, as used in this guideline, *includes* any act related to distribution for pecuniary gain, including production, transportation, and possession with intent to distribute." (Emphasis added.) The government reads the word "includes" as an indicator that some forms of distribution not for pecuniary gain are also covered by the guideline, whereas Black urges us to read it as shorthand for "should be defined as." We think that Black has the better of this argument. Most importantly, § 2G2.2(b)(2) measures the number of levels of an enhancement by the "retail value of the material," which implies a transaction for pecuniary gain. In addition, the government's interpretation of the word "includes" strikes us as strained. We note, however, on the other hand that pecuniary

gain is a broad concept itself, and it does not exclude the possibility of swaps, barter, in-kind transactions, or other valuable consideration. In light of the second stipulation with Black, however, this is clearly a case where the distribution was not for any kind of gain. Under the facts of this case, the five-level enhancement was not available, and the district court correctly refused to impose it.

Judgment affirmed.[3]

MANION, Circuit Judge, concurring in part and dissenting in part.

I concur with the court's decision to affirm Black's conviction. But regarding the sentence, I would reverse the district court and would remand for re-sentencing. The Department of Justice has filed a cross-appeal, and I would remand on that basis.

The court's opinion stresses an important (and dispositive) point—that Black was a frequent user of the Internet both to view and to dispense child pornography.

"The [AOL] records revealed both *distribution* and receipt of files by defendant. On five occasions he was the originator of several child pornography files onto the AOL system (*i.e.*, he was the AOL subscriber who first "uploaded" the image on to the system), on six other occasions he received such files, and on two other occasions he *distributed* such files by forwarding the images he received to another AOL subscriber."

*Ante* at 200 (emphases added).

So we agree that Black "distributed" child pornography. U.S.S.G. § 2G2.2(b)(2) is unequivocal on this issue. "If the offense involved *distribution*, increase by the number of levels from the table in § 2F1.1 corresponding to the retail value of the material,

but in no event by less than five levels." (Emphasis added.) Thus, even if the child pornography is worth less than $40,000,[1] the Guidelines mandate a five-level increase when the distribution of child pornography is involved. This also distinguishes the offense of distribution from mere receipt. Even if the retail value is negligible or not discernible, the Guidelines in effect at the time of Black's sentencing imposed a base offense level of 15 for receiving child pornographic material. A distributor of the same or similar material involving the exploitation of minors gets no less than a five-level increase. Distributors of pornographic material that has no ascertainable value, but is nevertheless harmful, cannot bypass the Guidelines.

And there is no reason to believe that Application Note 1 requires the government to prove that the defendant distributed his pornography to others "for pecuniary gain." While the note states that distribution "includes" any act related to distribution for pecuniary gain, the note should not be interpreted as limiting the types of distribution that are subject to the enhancement. (The Guidelines themselves define "includes" as a term of illustration, not limitation. *See* U.S.S.G. § 1B1.1, Application Note 2 ("[t]he term 'includes' is not exhaustive").) In fact, the note is quite expansive. Its purpose is to instruct courts that *where there is a pecuniary motive*, distribution includes *related* acts production, transportation, possession with intent to distribute that ordinarily are not considered acts of distribution. In other words, the Application Note *enlarges* the scope of activity subject to the enhancement. In cases like this one, it certainly should not be read to take away an enhancement mandated by the simple and unqualified language of § 2G2.2(b)(2). Moreover, it is worth noting for future cases that "pecuniary gain" itself is a broad concept, and retail sales are

---

**3.** Defendant's attack before us on the constitutionality of 18 U.S.C. § 3143(b)(1)(B) is hereby rejected. His petition for certiorari raising the same question was denied by the Supreme Court on March 24, 1997.

**1.** Section 2F1.1 sets out a graduated scale of progressively increasing offense levels designed to punish offenders based on the amount of loss in fraud cases involving forgery and counterfeiting. The cross-reference to this section for sexu-

al exploitation of minors targets large distributors who could be trafficking in pornography worth hundreds of thousands, even millions, of dollars. By placing a minimum on the level increase at five (which happens to be $40,000 to $70,000 under § 2F1.1), Congress is stressing that regardless of the retail value, if any, distributors of child pornography must receive a *minimum* five-level increase.

but one way to create value. A distributor may barter or trade for images on the Internet, perhaps even as a member of a pornographic trading club who must prove his bona fides by contributing to a pool of pictures like those Black sought and distributed.

What Black distributed apparently is called "cyberporn." Thomas E. Weber, *For Those Who Scoff At Internet Commerce, Here's a Hot Market,* Wall St. J., May 20, 1997, at A1. Revenue from the adult cyberporn market topped at least $50 million last year. *Id.* But the market Black participated in is far worse. Whether he acted for profit or for some other inexplicable reason, his activity still furthered the dissemination of child pornography and the victimization of children. The pornographic pictures are on the Internet because he put them there, and they may well remain in cyberspace in perpetuity. Bruce Black distributed child pornography, but despite the plain language of the Guidelines, his sentence does not reflect that. I would remand and instruct the district court to see that it does.