**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Hans BOOS, Defendant–Appellant.**

**No. 96–50404.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 8, 1997.

Decided Nov. 7, 1997.

---

Kenneth M. Miller, Law Office of Kenneth M. Miller, Santa Ana, California, for defendant-appellant.

Patricia A. Donahue, Asst. U.S. Atty., Los Angeles, California, for plaintiff-appellee.

Before: O'SCANNLAIN, FERNANDEZ and THOMAS, Circuit Judges.

O'SCANNLAIN, Circuit Judge.

We must decide in this case whether the "victim" of the crime of distributing child pornography is the individual child depicted in the image or society at large.

**I**

Defendant Hans Boos appeals his 30–month sentence for conspiracy to distribute or to receive child pornography under 18 U.S.C. § 371 and distribution of child pornography under 18 U.S.C. § 2252(a)(1). He challenges the district court's decision not to "group" seven substantive distribution counts (i.e. sentence them as a single unit rather than separately), a decision that resulted in Boos's sentencing guideline range being increased from 15–21 months to 30–37 months. Boos argues that society at large—and not the young girls depicted in the photographs he distributed—was the primary victim of his crimes. Because there was but a single victim, Boos contends, the district court should have grouped the distribution counts.

In October, 1991, Boos wrote from his home in Trinidad to his co-defendant, Jim Burchett, at his home in California. In this, the first in a series of letters, Boos mentioned that he had gotten Burchett's name from a mutual friend with whom the latter had swapped "photos of a special nature," and inquired whether Burchett might be interested in exchanging similar photographs with Boos. Over the course of the next eighteen months, Boos and Burchett corresponded regularly, describing in lurid detail their respective interests in child pornography. The two men also exchanged numerous pornographic photographs depicting young girls engaged in various sexually explicit acts, including genital-to-genital sex · with adult males, oral-to-genital sex with adult males, and lascivious exhibition of the genitals.

In November 1995, Boos was formally indicted on one count of conspiracy to distribute or to receive child pornography in violation of 18 U.S.C. § 371, twenty-one counts of distributing child pornography in violation of 18 U.S.C. § 2252(a)(1), and three counts of receiving child pornography in violation of 18 U.S.C. § 2252(a)(2). Pursuant to a written

plea agreement, Boos pled guilty to the single conspiracy count and to seven distribution counts.

Boos's sentence was calculated in accordance with the November 1995 Sentencing Guidelines Manual. Pursuant to U.S.S.G. § 2G2.2(a), for each count of the indictment, the base offense level was 15. A two-level enhancement applied under § 2G2.2(b)(1) because some of the materials depicted prepubescent minors. The presentence report grouped the conspiracy count with one of the substantive counts, but, significantly, did not group the remaining substantive counts, because they depicted "different children" and, hence, different victims. The decision not to group the substantive counts resulted in the offense level being raised five levels, from 17 to 22, pursuant to U.S.S.G. § 3D1.4. Finally, Boos received a three-level downward departure for early acceptance of responsibility, resulting in a final offense level of 19 and a corresponding sentencing range of 30 to 37 months.

The district court heard argument on the grouping issue and concluded that, because "these were separate pictures of separate victims ... the grouping doesn't—shouldn't apply here." The court therefore sentenced Boos to 30 months, the low end of the prescribed guideline range.

## II

On appeal, Boos challenges the district court's decision not to group the seven counts of distributing child pornography in violation of 18 U.S.C. § 2252(a)(1). Section 2252(a) provides for the punishment of:

Any person who -

(1) knowingly transports or ships in interstate or foreign commerce by any means including by computer or mails, any visual depiction, if -

(A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct; and

(B) such visual depiction is of such conduct....

18 U.S.C. § 2252(a)(1).

Under the United States Sentencing Guidelines, separate crimes may be "grouped" when they (1) "involve the same victim" and (2) are "connected by a common criminal objective or constitut[e] part of a common scheme or plan." U.S.S.G. § 3D1.2(b). The government does not dispute Boos's argument that the second of these requirements is satisfied. Consequently; for the purposes of this appeal, the issue before us can be reduced to the following: Who is the "victim," within the meaning of § 3D1.2(b), of the distribution of child pornography? Boos argues that society at large is the victim. He offers two slightly different variations on that general theme. First, and more generally, he asserts that society has an interest in preserving its "moral fabric." Second, and slightly more specifically, he argues that society has an interest in protecting future generations of children from the abuse that is facilitated by the proliferation of the child porn industry. In stark contrast to Boos's society-as-victim theories, the government contends that the children depicted in the pornographic images are themselves the victims of the distribution of those images. If we conclude that the children depicted are the primary victims, we must affirm the district court's decision not to group the distribution counts. If, on the other hand, we conclude that society at large is the primary victim, we must reverse that decision.

■ We review the district court's interpretation of the Sentencing Guidelines de novo. *See United States v. Robinson,* 94 F.3d 1325, 1327 (9th Cir.1996). More specifically, we review its decision regarding the grouping of offenses de novo. *See United States v. Hines,* 26 F.3d 1469, 1474–75 (9th Cir.1994).

### A

■ Application Note 2 to § 3D1.2 of the Sentencing Guidelines provides the following explanation of the term "victim":

The term "victim" is not intended to include indirect or secondary victims. Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim. For offenses in which there are no identifiable victims (*e.g.,* drug or immigration offenses, where society at large is the victim), the "victim" for purposes of [§ 3D1.2] is the societal interest that is harmed.

**1210**

U.S.S.G. § 3D1.2, cmt.2. Boos's theory, pressed at oral argument, that the primary "victims" of his crime were not the children depicted, but instead were children who belonged to "some as yet undetermined group of future potential victims" is flatly inconsistent with the Note's express reference to those "directly ... affected." Contrary to Boos's suggestion, a commonsense reading of the Note strongly suggests that, with regard to the distribution of child pornography, the "person[s] who [are] directly and most seriously affected," and are "therefore identifiable as the victim[s]," are the children who perform the pornographic acts.

Moreover, quite unlike the drug and immigration offenses mentioned in the Note— which are "victimless" crimes in the sense that the harm that they produce is spread evenly throughout society—the harm caused by the distribution of child pornography is concentrated. It is visited upon a single individual or discrete group of individuals, namely, the child or children used in the production of the pornographic material. The child pornographer simply cannot be analogized to the garden-variety drug user convicted under 21 U.S.C. § 844(a) of possessing a controlled substance, who is, practically speaking, *his own* victim. The *child* pornographer victimizes not himself, but *children.*

**B**

Our interpretation of the Application Note is confirmed, we believe, by the plain meaning of the word "victim," as used in the Guidelines. In interpreting § 3D1.2, we "follow[ ] the axiom that words used in a statute *are to be given their ordinary meaning in the absence of persuasive reasons to the contrary." Burns v. Alcala,* 420 U.S. 575, 580–81, 95 S.Ct. 1180, 1184–85, 43 L.Ed.2d 469 (1975); *accord United States v. Miguel,* 111 F.3d 666, 670 (9th Cir.1997) ("To ascertain the meaning of [a] statutory term, we start with the word['s] ordinary meaning."). *Webster's Ninth New Collegiate Dictionary*— dated 1986, only a year before the Sentencing Guidelines were promulgated—provides the following definition of the word "victim":

> one that is *acted on* and usu[ally] *adversely affected* by a *force* or *agent* ... [;] one that

is *injured, destroyed,* or *sacrificed* under any of various conditions ... [;] one that is subjected to *oppression, hardship,* or *mistreatment* ... [;] one that is *tricked* or *duped* ....

*Webster's Ninth New Collegiate Dictionary* 1314 (1986) (emphasis added).

From this, the common and ordinary definition, it seems to us scarcely debatable that the children depicted—many as young as 5 years old—were the primary "victims" of Boos's criminal conduct, as that word was likely understood by the drafters of the Guidelines. After all, it was the children depicted—and not society at large—who were "acted on" and "adversely affected," who oftentimes were "force[d]" to participate in the production of the pornography in which Boos traded, who were "injured" (both physically and psychologically) as a result of Boos's patronage of the porn industry, who were "sacrificed" to satisfy Boos's curiosities, who were "subjected" to the cruelest form of "oppression, hardship, [and] mistreatment" at the hands of pornography producers and photographers, and whose lives were quite possibly "destroyed" in the process. Moreover, unless one makes the very dubious assumption that the young children depicted in Boos's photographs made knowing and intelligent decisions to subject themselves to such mistreatment, it was the children—and not society at large—who were "tricked [and] duped" into participating in the pornographic activities.

**C**

Our conclusion that the children who participate in the production of pornography are the primary victims is further reinforced by strong signals indicating that, when it enacted 18 U.S.C. § 2252 in 1977, Congress itself considered these children to be the primary victims. Although we do not doubt that Congress was, as Boos argues, concerned with safeguarding the moral fabric of the Nation and with protecting "potential future victims" of pornography-motivated abuse when it promulgated § 2252, a review of the legislative history surrounding the adoption of the law *strongly* suggests that foremost among Congress's concerns was the protection of the young boys and girls being exploited in the production of child pornography.

In support of his argument that society, and not the young girls, is the primary victim of his conduct, Boos points to a single, isolated snippet of the Senate Report stating that the use of children in pornographic productions "is very harmful to both the children and the society as a whole." S.Rep. No. 95–438, at 40 (1977), *reprinted in* 1978 U.S.C.C.A.N. 40, 43. In addition to the rather obvious fact that Boos's chosen language no more supports his argument than it undermines it (in that the Report recognizes harm to *both* society *and* to children), his selective citation also ignores the overall tenor of the legislative history, which leaves little doubt that Congress's chief concern was the protection of the children involved in the production of the pornographic images.

According to the Senate Report, the statute was born out of "a deep and abiding concern for the health and welfare of the children and youth of the United States," and was enacted in order "to protect and benefit such children." *Id.* at 41. Quoting the initial resolution issued by the Committee on Human Resources, the Senate Report specifically condemned what it saw as "base and sordid activities *which may permanently traumatize and warp the minds of the children involved.*" *Id.* (emphasis added). Continuing, the Report elaborated:

> Of deep concern to the Committee is the effect of child pornography . . . on the *children who become involved.* . . .
>
> . . . .
>
> Such encounters cannot help but have a deep psychological, humiliating impact on these youngsters and jeopardize the possibility of healthy, affectionate relationships in the future.

*Id.* at 46 (emphasis added). Finally, the Report referred on numerous occasions to child pornography as a "form of child abuse," *see, e.g., id.* at 47, 48, 52; and, perhaps more importantly for the purposes of this case, in a section entitled "Profile of the Exploited Children," the Report referred very specifically on several occasions to the children involved as "child *victims* " and "boy *victims,*" *see id.* at 45–46 (emphasis added).

In sum, despite Boos's attempt to capitalize upon a single, isolated reference in the Report to the harm that the child pornography visits upon "the children and the society as a whole," the legislative history, when viewed in its entirety, confirms the conclusion that the primary "victims" that Congress sought to protect by enacting § 2252 were, in fact, the children involved in the production of pornography.

**D**

Boos's appeal raises a question of first impression in this circuit. Neither the Supreme Court nor the Ninth Circuit has ever squarely decided the precise issue presented to the court today. That is certainly not to say, however, that neither has commented on issues bearing directly on the outcome of this case. In fact, both courts have specifically lamented the harm visited upon children who are subjects of pornographic photographs and videos. In its decision in *New York v. Ferber,* 458 U.S. 747, 102 S.Ct. 3348, 73 L.Ed.2d 1113 (1982), the Supreme Court explicitly acknowledged that "the use of children as subjects of pornographic materials is harmful to the physiological, emotional, and mental health of the child," *id.* at 758, 102 S.Ct. at 3355 and that "sexually exploited children are unable to develop healthy affectionate relationships in later life, have sexual dysfunctions, and have a tendency to become sexual abusers as adults," *id.* at 758 n. 9, 102 S.Ct. at 3355 n. 9. Moreover, the *Ferber* Court detailed quite precisely the manner in which the *distribution* of child pornography—the specific crime to which Boos pled guilty—compounds the harm to the children depicted:

> The distribution of photographs and films depicting sexual activity by juveniles is intrinsically related to the sexual abuse of children. . . . [T]he materials produced are a permanent record of the children's participation and the harm to the child is exacerbated by their circulation.

*Id.* at 759, 102 S.Ct. at 3355.[1]

The Ninth Circuit echoed the Supreme Court's conclusions regarding the injury that

---

1. In light of the Supreme Court's discussion in *Ferber,* we categorically reject Boos's attempt to

draw a fine-line distinction between the *produc-*

child pornography causes the children employed in its production in *United States v. Wiegand*, 812 F.2d 1239 (9th Cir.1987). In that case, this court declared:

> The crime punished by the statutes against the sexual exploitation of children ... does not consist in the cravings of the person posing the child or in the cravings of his audience. Private fantasies are not within the statute's ambit. The crime is the offense against the child—the harm "to the physiological, emotional, and mental health" of the child, the "psychological harm," [and] the invasion of the child's "vulnerability." These harms collectively are the consequential damages that flow from the trespass against the dignity of the child.
>
> ....
>
> Human dignity is offended by the pornographer. American law does not protect all human dignity; legally, an adult can consent to its diminishment. When a child is made the target of the pornographer-photographer, the statute will not suffer the insult to the human spirit, that the child should be treated as a thing.

*Id.* at 1245 (citations omitted).

In addition to the *Wiegand* court's powerful statement regarding the harms visited upon the children involved in child pornography, this court recently explored, in a related context, the meaning of the word "victim" as used in § 3D1.2 of the Sentencing Guidelines. In *United States v. Butler*, 92 F.3d 960 (9th Cir.1996), the defendant appealed his sentence following his guilty pleas to three counts of travel with the intent to engage in a sexual act with a minor in violation of 18 U.S.C. § 2423(b). In light of the fact that the three "children" were in fact fictitious—the defendant had travelled from Washington to Oregon in response to an adult magazine advertisement that turned out to be a police sting operation—defendant argued that the three counts should be grouped pursuant to § 3D1.2. Defendant contended that "there were no real victims" and, thus, that "the only victim was society." *See id.* at 963. The *Butler* court, however, quickly and unanimously dispatched with defendant's argu-

tion of child pornography, which he concedes primarily injures the children involved, and the

ment, holding that even fictitious children constituted "victims" within the meaning of § 3D1.2:

> In this case, Appellant attempted to engage in sexual acts with specific juvenile victims. Had the victims been available, they, rather than society in general, would have been harmed. Therefore, this is not a crime merely against society, as in the case of the immigration or drug crimes mentioned in [Application Note 2 to § 3D1.2]; but rather, is a crime against specific victims.

*Id.* at 963–64. The rationale employed by the *Butler* court applies *a fortiori* to Boos's case, in which the child victims were actual, and not merely hypothetical.

In sum, although neither the Supreme Court nor the Ninth Circuit has decided the issue raised by Boos's appeal, through their statements on related matters, both have implied their belief that it is the children used in the production of child pornography, and not society as a whole, who are the primary victims of § 2252(a) violations.

**E**

Unlike the Ninth, both the Third and Eighth Circuits *have* specifically addressed the precise issue before the court today. In light of the fact that the Application Notes, the plain meaning of the word "victim," and the legislative history all point so clearly in the same direction, we find it profoundly unsurprising that both concluded in unanimous opinions, as we do today, that the children depicted in the pornographic images—and not society as a whole—are the primary victims of the distribution of child pornography. In *United States v. Rugh*, 968 F.2d 750 (8th Cir.1992), after quoting at length from the Senate Report, the Eighth Circuit announced that it "ha[d] no trouble concluding that the primary victim under 18 U.S.C. § 2252(a)(2) is the exploited child." *Id.* at 756. In so concluding, the court noted that, "merely because the exploitation of these children has a secondary effect on society at large does not diminish the fact that

distribution of that pornography, which he claims does not have the same injurious effect.

the primary victim in this crime is the child." *Id.* at 755.

More recently, in *United States v. Ketcham,* 80 F.3d 789 (3d Cir.1996), the Third Circuit reached precisely the same conclusion, relying primarily upon the title of the statute—The Protection of Children Against Sexual Exploitation Act—and the legislative history. In interpreting Application Note 2 to § 3D1.2, the *Ketcham* court held that "[o]nly if we can find no identifiable victim will we deem the primary victim to be society." *Id.* at 793. With regard to § 2252(a), the statute at issue in the instant case, the court, echoing the conclusion reached by the Eighth Circuit in *Rugh,* explicitly held that

> [t]his is not a statute where there is no identifiable victim. The fact that a criminal statute in a general sense protects society as a whole cannot suffice to make society the primary victim. Were this the case, society would be the primary victim of nearly every criminal statute.

*Id.*

In concluding that exploited children are the primary victims of a § 2252 violation, the *Rugh* and *Ketcham* courts expressly declined to follow the Fourth Circuit's holding in *United States v. Toler,* 901 F.2d 399 (4th Cir.1990), a case upon which Boos relies quite heavily. In *Toler,* the court concluded that "[a]n examination of [§ 2252(a)(1) ] and its legislative history demonstrates that its primary focus ... is the harm to the moral fabric of society at large." *Id.* at 403. The only significant support that the *Toler* court provided for its interpretation, however, was a single citation—contained in a footnote—to that portion of the Senate Report (the same sliver of the Report to which Boos points) stating that the use of children in the production of pornography is harmful "to both the children and the society as a whole." *See id.* at 403 n. 5 (quoting S.Rep. No. 95–438, at 5 (1977), *reprinted in* 1978 U.S.C.C.A.N. 40, 43). In light of the ordinary meaning of the word "victim" and the overwhelming evidence from those portions of the legislative history *not* cited by the *Toler* court, the Third and Eighth Circuits explicitly declined to follow the Fourth Circuit's ill-supported society-as-victim conclusion. Today, we do likewise.

## III

Boos would have this court conclude that society is the primary "victim" of the distribution of child pornography either because it has an interest in promoting "good morality" or because it has an interest in protecting "potential future victims" from harm. Boos's argument, however, proves entirely too much. We can think of nary a crime on the books—not murder, not rape, not robbery— that does not, in some abstract sense, injure those societal interests. Yet surely none would dispute that the victim of a murder is the person whose life is cut short. Nor do we believe that the primary victims of a rape or robbery would be difficult to identify. Contrary to Boos's protestations, we believe that the distribution of child pornography— like murder, rape, and robbery—does indeed have identifiable victims. Those victims are the children who participate in the pornography's production.

The commentary provided in the Application Notes to § 3D1.2, the ordinary meaning of the term "victim," and the clear import of the legislative history surrounding the enactment of § 2252(a) all lead us inexorably toward the same conclusion. We hold that it is the children depicted—and not society at large—who are the primary "victims" of the crime of distributing child pornography. The district court's decision not to group the seven substantive distribution counts was therefore proper.

**AFFIRMED.**