**UNITED STATES of America, Plaintiff–Appellant/Cross–Appellee,**

v.

**James Allen HIBBLER, Defendant–Appellee/Cross–Appellant.**

Nos. 96–2345, 96–2450.

United States Court of Appeals, Sixth Circuit.

Argued May 1, 1998.

Decided Oct. 21, 1998.

---

**3.** We note that our opinion here makes no findings as to the merits of any state law claims

plaintiff may have.

234

Richard S. Murray, Asst. U.S. Attorney (argued and briefed), Office of U.S. Attorney for Western District of Michigan, Grand Rapids, MI, for Plaintiff–Appellant/Cross–Appellee.

Randall S. Levine (argued and briefed), Anastase Markou (argued), Levine & Levine, Kalamazoo, MI, for Defendant–Appellee/Cross–Appellant.

Before: MERRITT, NORRIS, and WALLACE, Circuit Judges.*

* The Honorable J. Clifford Wallace, Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

NORRIS, J., delivered the opinion of the court, in which WALLACE, J., joined.
MERRITT, J. (p. 238), delivered a separate opinion concurring in part and dissenting in part.

## OPINION

ALAN E. NORRIS, Circuit Judge.

This appeal stems from defendant James Allen Hibbler's conviction for shipping and possession of child pornography. Although he was convicted of seven shipping counts and one possession count, the sentence imposed upon him by the district court included no period of incarceration. The government now appeals from defendant's sentence, arguing that the district court erred by grouping his offenses for sentencing and by refusing to include in his sentencing calculation a five-level upward adjustment for "distributing" child pornography pursuant to U.S.S.G. § 2G2.2(b)(2). Because the sentencing issues raised here are the overriding issues on appeal and have not been squarely addressed by this court, we discuss them below. All other issues raised by this appeal are addressed in an unpublished appendix to this opinion.

### I.

In May 1995, defendant purchased a home computer and opened an account with America Online (AOL), a computer service provider allowing its subscriber to, among other things, access the Internet. He then created the screen name "SHIGUY5811." Using this screen name, he logged onto AOL and created a false profile, claiming to be a student born in 1976 whose hobbies included trading "gifs"[1] depicting child pornography. Between August 12 and September 13, 1995, defendant logged onto AOL approximately fifty times for a total of over sixty-eight hours of computer time under the screen name SHIGUY5811.

Around the same time that defendant purchased his home computer, the FBI was organizing a group of agents assigned to investigate the trading of child pornography on AOL. As a part of their investigation, the agents created e-mail boxes to target individuals previously identified as distributors of child pornography. One of the targets was an individual who used the screen name BILLBUM.

During their investigation of BILLBUM, the FBI discovered evidence also incriminating defendant. An FBI agent obtained image files depicting children engaged in explicit sexual conduct from BILLBUM that were forwards of images BILLBUM had previously received from defendant. The e-mails received from BILLBUM indicated that defendant had traded images of child pornography on numerous occasions.

In September 1995, the FBI executed a search warrant at the home of defendant and at AOL's computer facility in Vienna, Virginia. From defendant's home the agents seized his computer, handwritten notes listing screen names and image names suggestive of trading pornography, and a videotape of a "Nightline" television program about Internet pornography. In addition, a search of defendant's computer equipment revealed over twenty-one images of child pornography and some adult pornography. Another child pornographic image was also discovered during the search of defendant's e-mail box at AOL.

During the search of his home, defendant, a school principal, claimed that he was "investigating" the accessibility of pornography on the Internet because his school was in the process of going on-line. Further investigation revealed that, although the school was upgrading its computer network, plans did not include a general connection to the Internet or to on-line services such as AOL. Furthermore, defendant was not a member of, or a consultant to, the committee at the school responsible for developing and carrying out the network upgrading plan.

Defendant was charged in a seventeen-count indictment of conspiracy to ship and receive images depicting child pornography, in violation of 18 U.S.C. § 371, receiving by computer transmission sexually explicit images of children, in violation of 18 U.S.C. § 2252(a)(2), sending such images by com-

---

1. GIF is computer slang for on-line pictures.

puter, in violation of 18 U.S.C. § 2252(a)(1), and possession of at least three computer files containing visual images of child pornography, in violation of 18 U.S.C. § 2252(a)(4).

After an eight-day trial, the jury found defendant guilty of seven counts of shipping child pornography and one count of possession of child pornography, but acquitted him of the remaining charges.

At sentencing, the government argued that, because defendant's conduct affected separate victims, the counts could not be grouped together, and thus he should receive a five-level upward adjustment. *See* U.S.S.G. § 3D1.4. Defendant, however, argued that the charged acts were only individual parts of a single scheme with just one objective because the children could not be identified and because several of the counts were based upon common images. The district court denied the government's request, agreeing with defendant that the victim in each of the counts was society at large, and thus that the counts should be treated as one for sentencing purposes pursuant to U.S.S.G. § 3D1.2.

The government also argued that defendant should receive a five-level enhancement for distribution pursuant to U.S.S.G. § 2G2.2(b)(2). According to defendant, that guideline section applies only in cases involving distribution for pecuniary gain. The district court, agreeing with defendant, held that the specific offense characteristic of distribution should be reserved for sales of child pornography.

The district court then denied a two-level increase sought by the government based upon prepubescent images and granted defendant a reduction for acceptance of responsibility. The district court also granted defendant a three-level downward departure, stating that

the facts and circumstances of this case under which a school district adopts a bond proposal that provides for computerizing the schools, a middle school principal thereafter obtains his own computer and then sees a Nightline expose on the access of pornography by children over the Internet and undertakes an investigation of that fact ... is not the type of conduct that was

taken into account by the Sentencing Commission in formulating the guidelines....

The degree of downward departure was specifically chosen in order to permit a sentence that did not require imprisonment, as the court opined that "imprisonment is not a prerequisite for this offense under the specific facts of this case...." The court then sentenced defendant to twenty-four months' probation, and levied a $500 fine. Both parties appeal.

## II.

■ The first issue raised by the government's appeal concerns whether the district court erred by identifying society as the victim of defendant's crimes rather than the children depicted in the pornographic images and then by treating seven shipment counts and one possession count, each of which occurred at different times and involved different children, as one offense for sentencing. We review the district court's interpretation and legal conclusions regarding application of the Sentencing Guidelines de novo. *United States v. Surratt,* 87 F.3d 814, 817–18 (6th Cir.1996).

Section 3D1.2 of the guidelines provides that "[a]ll counts involving substantially the same harm shall be grouped together into a single Group." U.S.S.G. § 3D1.2. "In essence, counts that are grouped together are treated as constituting a single offense for purposes of the guidelines." U.S.S.G. Ch. 3, Pt. D intro. commentary. In order to determine whether the counts should be grouped together, a court must determine whether the counts involve: (1) the same victim; and (2) the same act or transaction. U.S.S.G. § 3D1.2. The dispute we are asked to resolve is whether the multiple counts defendant was convicted of involved the same victim. The term "victim," as used in § 3D1.2, is explained in the commentary to that section:

Generally, there will be one person who is directly and most seriously affected by the offense and is therefore identifiable as the victim. For offenses in which there are no identifiable victims (*e.g.,* drug or immigration offenses, where society at large is the victim), the "victim" for purposes of

[§ 3D1.2] is the societal interest that is harmed. . . .

U.S.S.G. § 3D1.2, commentary (n.2).

Between August 12 and September 13, 1995, defendant shipped at least seven images and possessed at least one image of pornography; each image contained depictions of a different child. Defendant maintains, however, that because the children depicted in the pornographic images were not identified, society at large is the victim and his counts were thus properly grouped. We disagree.

■ Only in those instances where there is no identifiable victim should a court deem the primary victim to be society. *See United States v. Ketcham,* 80 F.3d 789, 792–93 (3d Cir.1996). With regard to the distribution of child pornography, the persons who are directly and most seriously affected, and therefore identifiable as the victims, "are the children who perform the pornographic acts." *United States v. Boos,* 127 F.3d 1207, 1210 (9th Cir.1997). As the Court of Appeals for the Ninth Circuit recognized in *Boos,* "quite unlike the drug and immigration offenses mentioned in [Application] Note [2 to § 3D1.2]—which are 'victimless' crimes in the sense that the harm that they produce is spread evenly throughout society—the harm caused by the distribution of child pornography is concentrated [upon the child]." *Boos,* 127 F.3d at 1210. The child pornographer, quite simply, directly victimizes the children pictured in such materials. One need not know the child's name to verify this fact.

When it adopted 18 U.S.C. § 2252, Congress clearly considered the children depicted in such materials to be the primary victims. *See Boos,* 127 F.3d at 1211 (relying upon the Senate's statement, in Senate Report No. 95–438, 95th Cong. 2nd Sess. (1978) U.S.Code Cong. & Admin.News, p. 40, that "[o]f deep concern to the Committee is the effect of child pornography . . . on the children who become involved. . . . Such encounters cannot help but have a deep psychological, humiliating impact on these youngsters and jeopardize the possibility of healthy, affectionate relationships in the future.").

Accordingly, we hold that it is the children depicted in the child pornography distributed and possessed by defendant who are the primary victims of the crimes of which he was convicted.

## III.

■ U.S.S.G. § 2G2.2(b)(2) provides: "If the offense involved distribution, increase by the number of levels from the table in § 2F1.1 corresponding to the retail value of the material, but in no event by less than 5 levels." Defendant contended, and the trial court agreed, that this distribution enhancement is limited to child pornography transactions involving pecuniary gain. According to Application Note 1 to that guideline, " '[d]istribution' [as used in this guideline] includes any act related to distribution for pecuniary gain, including production, transportation, and possession with intent to distribute." U.S.S.G. § 2G22, commentary (n.1).

■ Two courts of appeals have recently considered this issue but have reached different conclusions. *Compare United States v. Canada,* 110 F.3d 260, 263 (5th Cir.1997) (holding that the definition of "distribution" as used in § 2G2.2(b)(2) is not limited to transactions for pecuniary gain) with *United States v. Black,* 116 F.3d 198, 202–03 (7th Cir.1997) (holding that "distribution" as used in § 2G2.2(b)(2) is limited to transactions for pecuniary gain, but includes swaps, barters, in-kind transactions and other valuable consideration.). In holding that the term "distribution" is not limited only to transactions conducted for pecuniary gain, the Court of Appeals for the Fifth Circuit reasoned that "[t]he plain meaning of [the word 'includes'] unambiguously indicates that the intended definition of 'distribution' for the sake of the guideline is meant to be inclusive of pecuniary gain purposes, but not exclusive of all other purposes." *Canada,* 110 F.3d at 263. Indeed, the guidelines define "includes" as a term of illustration and not limitation. *See* U.S.S.G. § 1B1.1, commentary (n.2)("[t]he term 'includes' is not exhaustive"). Thus, because we are persuaded by the reasoning employed by the Fifth Circuit, we hold that the enhancement provided for in

238

§ 2G2.2(b)(2) is not limited to instances involving distribution for pecuniary gain.

 Contrary to defendant's assertions, such a holding does not render the original base offense level of fifteen for the "trafficking" of child pornography superfluous. The guidelines distinguish between mere receipt and distribution. The base offense level takes into account the possession or receipt of child pornography; the distribution of child pornography for like images or for pecuniary gain under $70,000 receives a five-level enhancement of the base offense level. Further, any distribution for pecuniary gain over $70,000 receives an enhancement of more than five levels. Thus, under the guidelines, the sentencing court must impose an enhancement based upon the retail value of the child pornography distributed. In most cases, the value can be easily calculated, e.g., by looking to the proceeds received from the transaction. In cases similar to the one at hand, however, where no actual "sale" takes place and hence the value of the materials distributed is not easily ascertainable, the minimum five-level enhancement is appropriate. U.S.S.G. § 2G2.2(b)(2) (setting the enhancement level for distribution "in no event by less than five levels"); *see also United States v. Canada*, 110 F.3d 260, 263 (5th Cir.1997). The guidelines, therefore, mandate a continuum of punishment correlated to the value of the distributed materials.

The facts established at trial show that defendant traded images depicting child pornography for pictures of like kind over the Internet. This type of distribution is clearly within the parameters of § 2G2.2, and thus his sentence should have been enhanced accordingly.

### IV.

For the reasons stated above, the district court's sentence is **vacated** and this cause is **remanded** for re-sentencing. For the reasons stated in the unpublished appendix to this opinion, we **affirm** the district court's disposition of the other issues on appeal.

MERRITT, Circuit Judge, concurring in part and dissenting in part.

I agree with the opinion of the court except for section III. The guideline in question defines distribution as "distribution for pecuniary gain." There was no such gain in this case, and so the 5–level increase is uncalled for. I would follow the Seventh Circuit in the case of *United States v. Black*, 116 F.3d 198 (1997), on this point.