RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit Rule 206

ELECTRONIC CITATION: 2002 FED App. 0416P (6th Cir.)
File Name: 02a0416p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
　　　　*Plaintiff-Appellee,*

　　　*v.*　　　　　　　　　　　No. 01-3697

ROBERT PAUL BOYD,
　　　　*Defendant-Appellant.*

———————————

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 99-00336—Lesley Brooks Wells, District Judge.

Argued: November 1, 2002

Decided and Filed: December 4, 2002

Before: MERRITT and GILMAN, Circuit Judges;
TARNOW, District Judge.[*]

———————————

## COUNSEL

**ARGUED:** Edward G. Bryan, FEDERAL PUBLIC
DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant.
Marilyn A. Cramer, ASSISTANT UNITED STATES

———————————

[*] The Honorable Arthur J. Tarnow, United States District Judge for
the Eastern District of Michigan, sitting by designation.

ATTORNEY, Cleveland, Ohio, for Appellee.  **ON BRIEF:** Edward G. Bryan, FEDERAL PUBLIC DEFENDER'S OFFICE, Cleveland, Ohio, for Appellant.  Marilyn A. Cramer, ASSISTANT UNITED STATES ATTORNEY, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

RONALD LEE GILMAN, Circuit Judge.  Robert Paul Boyd pled guilty to a one-count indictment charging him with receiving visual depictions of minors engaged in sexually explicit conduct.  The district court sentenced him to a 188-month term of imprisonment, followed by five years of supervised release.  Boyd appeals three sentencing enhancements under the United States Sentencing Guidelines.  For the reasons set forth below, we **AFFIRM** in part and **REVERSE** in part the judgment of the district court, and **REMAND** for resentencing.

### I.  BACKGROUND

**A.  Factual background**

On December 1, 1997, Robert Paul Boyd was released from prison in Florida, where he had been serving a sentence for sexual battery and for lewd and lascivious acts with minors. He then began a ten-year term of probation.  Later that month, Boyd relocated to Mansfield, Ohio, causing the supervision of his probation to be transferred to the Richland County Probation Office.

Boyd began receiving depictions of young children through his home computer in January of 1998.  He downloaded several thousand such images over the next four months. The children were naked in a majority of these images, with a substantial number featuring prepubescent minors.  In many of the images, the children were engaged in sexually explicit conduct.  Boyd communicated with two people known as

I respectfully dissent from the reversal of the district court's application of § 2G2.2(b)(2).  Boyd admitted to attempting to send "pornographic child pornography."  Such an admission is, in my opinion, sufficient to support the district court's finding that he distributed material involving the sexual exploitation of a minor.  In *United States v. Kimbrough*, 69 F.3d 723, 734 (5th Cir. 1995), the Fifth Circuit upheld an enhancement for distribution pursuant to § 2G2.2(b)(2) where the only evidence before the district court concerning the nature of the material distributed was the testimony of a federal agent that the defendant's "bulletin board system included closed files containing pornographic material depicting children."  I believe that the defendant's own admission that he attempted to send "pornographic child pornography" is even stronger evidence than that in *Kimbrough*.  Under these circumstances, I cannot say that the district court's application of § 2G2.2(b)(2) was clearly erroneous.  I would therefore affirm the district court's enhancement of Boyd's base offense level for distribution.

### III.  CONCLUSION

For all of the reasons set forth above, we **AFFIRM** the sentencing enhancements for use of a computer in transmitting the child-pornographic material and for obstruction of justice, **REVERSE** the sentencing enhancement for distribution of the material, and **REMAND** for resentencing consistent with this opinion.

wouldn't go through because of the noise on our phone line." This court has previously held that "the enhancement provided for in § 2G2.2(b)(2) is not limited to instances involving distribution for pecuniary gain." *United States v. Hibbler*, 159 F.3d 233, 237-38 (6th Cir. 1998). Indeed, the *Hibbler* court decided that the five-level enhancement was proper where the defendant had traded images of child pornography online with another individual. *Id.* at 238. Contrary to Boyd's suggestion, nothing in *Hibbler* depends on anyone actually receiving a computer-readable image from the defendant.

Notwithstanding the *Hibbler* case, in the opinion of Judges Merritt and Tarnow, the evidence in the record is insufficient to support the enhancement. It is not possible on the record before us to discern the nature of the material Boyd attempted to send to "Robb." The material itself is nowhere in the record. Some of the material he received was not in fact pornographic or obscene. Only the portion of the material depicting sexual activity falls within the "pornographic or obscene" category. A majority of the panel considers Boyd's admission to be no more than a conclusory description of the nature of the material in question, rather than evidence. Although Boyd agreed with his interrogator that the material he tried to send was "pornographic child pornography," the majority concludes that, in the absence of any further evidence regarding the material, there was no way for the district court to decide what was meant by this phrase or what kind of material he intended but was unable to send.

My colleagues Merritt and Tarnow believe that *Hibbler's* interpretation of § 2G2.2(b)(2) should be narrowly applied. They also believe that—without any showing that the material was in fact sexual in nature and unprotected by the First Amendment—Boyd's so-called admission should not be read expansively. Thus they are "left with the definite and firm conviction that a mistake has been committed," *United States v. Hurst*, 228 F.3d 751, 756 (6th Cir. 2000), by the district court in applying the five-level enhancement for distribution, which greatly increases the sentence imposed.

"Robb" and "Stephan" about child pornography, both of whom transmitted child pornography to him through their computers.

Boyd's probation officer, Michael Wallery, visited him at his residence on April 21, 1998. Wallery questioned Boyd about his use of the computer. Although Boyd denied using his computer to access or possess child pornography, Wallery informed him that there would be a more thorough visit in a few days. Boyd subsequently deleted many of his child-pornography computer files in anticipation of the upcoming probation interview. Nevertheless, when Wallery returned three days later, he discovered pornographic images of young children on Boyd's computer.

Wallery contacted Sergeant Jeff McBride of the Richland County Sheriff's Department the same day to inform him of these circumstances. McBride promptly interviewed Boyd at the latter's residence. At the conclusion of the interview, McBride seized Boyd's computer. A search warrant was subsequently obtained to examine the computer's contents. The ensuing search uncovered 74 images of naked children. In many of the images, the children were engaged in sexual activity.

## B.   Procedural background

The grand jury for the Northern District of Ohio returned a one-count indictment against Boyd on September 22, 1999, charging him with knowingly receiving visual depictions of minors engaged in sexually explicit conduct, in violation of 18 U.S.C. § 2252(a)(2). Boyd pled guilty. His case was then referred to the United States Probation Office for a presentence investigation and report.

The Presentence Report (PSR) placed Boyd's base offense level at 17, pursuant to United States Sentencing Guideline § 2G2.2, the guideline for "Receiving, Transporting, Shipping, or Advertising Material Involving the Sexual Exploitation of a Minor." It then recommended enhancements to his offense level based upon (1) use of a

computer for transmission of the material, (2) obstruction of justice, and (3) distribution of the material. Boyd objected to these enhancements. After a hearing, the district court overruled his objections and sentenced him to a 188-month term of imprisonment and five years of supervised release. This timely appeal followed.

## II.  ANALYSIS

### A.  The district court did not err in increasing Boyd's base offense level on the ground that a computer was used in the transmission of unlawful depictions

Boyd first contends that the district court erred in adding two points to his base offense level on the ground that "a computer was used for the transmission of the material." U.S. Sentencing Guidelines Manual § 2G2.2(b)(5) (1998). The evidence underlying this enhancement is not disputed, and the issue effectively turns on interpreting a particular set of words in the guideline. Our review is therefore de novo. *See United States v. Winbush*, 296 F.3d 442, 443 (6th Cir. 2002) (reviewing de novo whether a particular phrase warrants an enhancement for offense conduct amounting to a threat of death); *United States v. Haas*, No. 00-5956, 2002 WL 818309, at *5 (6th Cir. Apr. 29, 2002) (explaining that review of a sentencing enhancement should be de novo where the application of the guidelines is not "fact-bound").

"Robb" and "Stephan" used computers to send Boyd child pornography, and Boyd used his computer to receive these transmissions. The government contends that, on these facts, "a computer was used for the transmission of the material." On the other hand, Boyd argues that the enhancement should apply only to a defendant who uses a computer to transmit the material, not to one whose computer use is limited to its receipt.

Boyd supports his argument by referencing § 2G2.4, the guideline for "Possession of Materials Depicting a Minor Engaged in Sexually Explicit Conduct." That guideline provides for a base offense level of 15 and a 2-point

We limit ourselves, therefore, to consideration of the 1998 edition, because it was pursuant to that edition that the district court sentenced Boyd.

Section 2G2.2(b)(2) provides as follows: "If the offense involved distribution, increase by the number of levels from the table in § 2F1.1 corresponding to the retail value of the material, but in no event less than 5 levels." The first application note for this section explains that "'[d]istribution' includes any act related to distribution for pecuniary gain, including production, transportation, and possession with intent to distribute." U.S. Sentencing Guidelines Manual § 2G2.2 cmt. n.1 (1998). Finding that Boyd successfully attempted to locate another person with whom to share child pornography, the district court enhanced his offense level by five points.

Boyd asserts that there was insufficient evidence before the district court to determine that he had distributed material involving the sexual exploitation of a minor for value. The district court's rejection of Boyd's argument is the type of "fact-bound application of the guideline provisions" that this court reviews under the "clearly erroneous" standard. *United States v. Jackson-Randolph*, 282 F.3d 369, 389-90 (6th Cir. 2002) (holding that where the district court's application of the guidelines is "fact-bound," both factual findings and application of the guidelines to those facts should be set aside only if they are clearly erroneous); *cf. United States v. Paul*, 274 F.3d 155, 162 (5th Cir. 2001) (applying a deferential standard of review to the district court's application of § 2G2.4, a companion guideline to § 2G2.2).

Boyd admitted that he received images of children engaged in sexual activity from "Robb" and "Stephan." The record is also clear that much of the material consists of nude children not engaged in sexual activity—material that appears not to be proscribed by the law and would therefore be protected by the First Amendment. Boyd also answered affirmatively a question asking whether he attempted to send "pornographic child pornography to Robb," although he said "that it

**C.  The district court erred in increasing Boyd's base offense level on the ground that the offense involved distribution**

The final question before us on appeal is whether the district court erred when it increased Boyd's offense level five points because it found that his offense involved distribution, pursuant to United States Sentencing Guidelines Manual § 2G2.2(b)(2). Boyd argues that there was no evidence before the district court that he engaged in the distribution of material involving the sexual exploitation of minors.

Much of Boyd's argument on this issue is based on language found in the 2001 edition of the United States Sentencing Guidelines Manual. The government, however, maintains that because "the parties stipulated and agreed, both in the written Plea Agreement and during the February 1, 2000 change of plea hearing, that the 1997 Sentencing Guidelines applied to this case[,] Boyd's attempts to argue the 2001 sentencing guidelines now in his appeal for the first time are improper." Boyd's counsel agreed with this statement at oral argument, confessing that his citation to the 2001 guidelines was in error. In fact, however, the PSR calculated Boyd's total offense level using the 1998 edition of the United States Sentencing Guidelines Manual. The selection of this edition in the PSR is not explained, and the district court did not comment on the choice in adopting the PSR's recommendation. All of this is quite puzzling in light of § 1B1.11 of the Guidelines Manual, which is the same in all three versions and reads as follows: "The court shall use the Guidelines Manual in effect on the date that the defendant is sentenced." Boyd was sentenced on June 15, 2001, at which time the 2000 edition was still in effect.

Neither Boyd nor the government, however, objected to the PSR's use of the 1998 United States Sentencing Guidelines Manual. Nor has the issue been directly addressed on appeal. In any event, calculating Boyd's total offense level under the 1997, 1998, or 2000 editions of the United States Sentencing Guidelines Manual would yield the same substantive result.

enhancement "[i]f the defendant's possession of the material resulted from the defendant's use of a computer." U.S. Sentencing Guidelines Manual § 2G2.4(b)(3) (1998). Boyd points out that if a defendant downloads images of child pornography but does not transmit the images, his offense level would be 19 if he is sentenced pursuant to § 2G2.2 and the enhancement applies to *receipt* of the child pornography using a computer (base of 17 plus 2-point enhancement), but it would be 17 if he is sentenced for *possession* of the child pornography under § 2G2.4 (base of 15 plus 2-point enhancement). This would yield the anomalous result of punishing the identical conduct differently depending on the guideline used.

Boyd has a point, but it has little to do with computers. As the Seventh Circuit has recognized, "[t]he puzzle is why receiving, which under the first guideline [§ 2G2.2] and the statute that it implements is punished as severely as sending, should be punished more severely than possessing, since possessors, unless they fabricate their own pornography, are also receivers." *United States v. Richardson*, 238 F.3d 837, 839 (7th Cir. 2001) (internal citation omitted). The specter of punishing identical conduct differently thus derives from the existence of these two different guidelines, not from the guidelines' treatment of computer use. Boyd, however, does not argue that he should have been sentenced under § 2G2.4, so we have no reason to concern ourselves any further with this apparent inconsistency in the guidelines.

Returning now to § 2G2.2(b)(5), considerations of consistency counsel against Boyd's proposed interpretation of that section. Section 2G2.2, by its title, applies equally to receiving and shipping material involving the sexual exploitation of a minor, and the enhancement applies "[i]f a computer was used for the transmission of the material." The enhancement is not limited to transmission *by the defendant*. As the Seventh Circuit has reasoned:

A defendant who receives in the mails a magazine containing child pornography is punished the same (apart

from individual differentiating characteristics such as criminal history) as the one who sent it. What sense would it make to break this punishment identity just because the mode of transmission was the Internet rather than the mails? Use of the Internet enhances the dangers that child pornography poses, because it is a more discreet and efficient method of distribution; but if this makes the sender more dangerous, it likewise makes the receiver more dangerous.

*Richardson*, 238 F.3d at 841-42. We find *Richardson* persuasive and conclude that the district court did not err in increasing Boyd's base offense level under § 2G2.2(b)(5).

**B.    The district court did not err in increasing Boyd's base offense level on the ground that he obstructed the administration of justice**

We next turn to Boyd's contention that the district court erred in adding two points to his base offense level for obstruction of justice. United States Sentencing Guidelines Manual § 3C1.1 requires such an increase where "(A) the defendant willfully obstructed . . . the administration of justice during the course of the investigation . . . of the instant offense of conviction, and (B) the obstructive conduct related to (i) the defendant's offense of conviction . . . ." We review the district court's application of § 3C1.1 under the "clearly erroneous" standard. *United States v. Jackson-Randolph*, 282 F.3d 369, 390 (6th Cir. 2002).

Boyd admitted to McBride that after Wallery inquired about his use of the computer, he deleted 50 to 100 images of child pornography in order to avoid detection by his probation officer. Destruction of material evidence amounts to obstruction of justice. U.S. Sentencing Guidelines Manual § 3C1.1 cmt. n.4(d) (1998) (listing, as an example of the type of conduct to which the adjustment applies, "destroying . . . evidence that is material to an official investigation"). At issue, then, is whether the fact that Boyd deleted these files prior to the involvement of the Sheriff's Department moves his actions beyond the reach of § 3C1.1.

"[T]he obstruction adjustment applies where a defendant engages in obstructive conduct with knowledge that he or she is the subject of an investigation or with the correct belief that an investigation of the defendant is probably underway." *United States v. Brown*, 237 F.3d 625, 628 (6th Cir. 2001) (internal quotation marks omitted). In this case, Boyd knew that his probation officer was investigating his computer use to determine whether Boyd possessed child pornography. He contends, however, that an investigation by his probation officer is distinct from the investigation by the police that led to his indictment. According to Boyd, the official investigation did not begin until after Wallery contacted McBride on April 24, 1998.

We reject Boyd's argument. Our sister circuits that have considered what counts as "the investigation" under § 3C1.1 have concluded that an investigation into the offense conduct is within the purview of the guideline where it "involve[s] some type of law enforcement or other action by government employees acting within the course and in furtherance of their official duties." *United States v. Kirkland*, 985 F.2d 535, 538 (11th Cir. 1993); *see also United States v. Emery*, 991 F.2d 907, 912 (1st Cir. 1993) ("Thus, consistent with . . . the Sentencing Commission's discernible intent, a traditionalist approach to sentencing, and the weight of authority, we hold that so long as *some* official investigation is underway at the time of the obstructive conduct, the absence of a *federal* investigation is not an absolute bar to the imposition of a section 3C1.1 enhancement.") (emphasis in original).

We find the reasoning of *Kirkland* and *Emery* to be persuasive. Wallery's investigation into whether Boyd was using his computer to receive or distribute child pornography was within the course and scope of his official duty as a state probation officer. The admission by Boyd that he deleted images of child pornography so that Wallery would not find them is therefore sufficient to support enhancing his base offense level pursuant to § 3C1.1.