**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 97-4892

EDGAR FRANKLIN FRANCE,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Greensboro.
James A. Beaty, Jr., District Judge.
(CR-96-262, CR-97-101)

Argued: September 22, 1998

Decided: December 29, 1998

Before WILKINSON, Chief Judge, WIDENER, Circuit Judge, and
MAGILL, Senior Circuit Judge of the United States Court of
Appeals for the Eighth Circuit, sitting by designation.

_____

Affirmed by published opinion. Judge Widener wrote the opinion, in
which Chief Judge Wilkinson and Senior Judge Magill joined.

_____

**COUNSEL**

**ARGUED:** Edward Jennings, Winston-Salem, North Carolina, for
Appellant. Paul Alexander Weinman, Assistant United States Attor-
ney, Winston-Salem, North Carolina, for Appellee. **ON BRIEF:** Wal-
ter C. Holton, Jr., United States Attorney, Winston-Salem, North
Carolina, for Appellee.

_____

**OPINION**

WIDENER, Circuit Judge:

Edgar France appeals following his conviction on two counts of perjury pursuant to 18 U.S.C. § 1623(a) and one count each of money laundering, 18 U.S.C. § 1956(a)(1)(A)(i), and conspiracy, 21 U.S.C. § 846. We affirm.

I.

Evidence indicated that France's involvement in the drug trade in and around Mount Airy, North Carolina continued for a number of years throughout the 1980s and 1990s. One of his co-conspirator's in that endeavor was Tommy McBride; another was Judy King. During the course of a federal investigation into McBride's illegalities, France gave immunized testimony before a grand jury three times in 1996; once on July 30, again on August 27, and finally on October 28. On two of those occasions, France denied prior statements made to investigators in 1991 and in 1993 naming McBride as his source of drugs. Those denials served as the basis for France's perjury convictions.

Mrs. King's participation in the conspiracy gave rise to France's money laundering charge. In addition to introducing some of the drug conspiracy's key players to one another, Mrs. King traveled to New York to purchase cocaine which she supplied to France and McBride. While returning from one such trip, in February 1995, New Jersey police arrested Mrs. King on state drug charges. France helped her post bail, securing her release during the pendency of those charges. The government based France's money laundering charge on the financial transaction relating to Mrs. King's bail.

France's first trial addressed the two perjury charges. On February 12, 1997, the jury found him guilty on both counts. Following another trial on July 7, 1997, a second jury returned a guilty verdict on the conspiracy and money laundering counts. On September 30, 1997, the court sentenced France for all four offenses. France filed one notice of appeal for all of the four convictions, and we consider the four here as one case.

2

France raises five issues on appeal: (1) whether sufficient sources, independent of his immunized grand jury testimony, existed for the evidence presented against France in his second trial; (2) whether the evidence supported the verdict and whether the perjury indictment was sufficient as alleged; (3) whether there was sufficient evidence to convict France of money laundering; (4) whether the district court erred in enhancing France's sentence; and (5) whether the district court's evidentiary rulings were erroneous.

II.

A.

On June 30, 1997, the district court held an evidentiary hearing on France's motion to dismiss his indictment pursuant to the Supreme Court's decision in Kastigar v. United States , 406 U.S. 441 (1972), that the government must establish an independent source for all evidence used to prosecute a witness who had previously testified under a grant of immunity. See United States v. Harris , 973 F.2d 333 (4th Cir. 1992). France's motion was denied on July 3, 1997, and on September 10, 1997, the court entered an order making factual findings that a sufficient independent source existed for all of the evidence presented by the government at France's trial.

France's complaint regarding the evidence used to indict and eventually try him appears to be two fold. First, he contends that the testimony resulting from his prior grand jury appearances, all of which was immunized, contained common threads which were used by the government, albeit indirectly, in the context of the investigation which led to his indictment and prosecution. Next, France contests the government's direct use at trial of a series of checks which he produced before the grand jury and the testimony which accompanied them in support of the money laundering charge against him. With respect to most of the evidence in question, that which France claims was indirectly used against him, we are of opinion that the district court's determination that the government proved a sufficient independent source for that evidence was not clearly erroneous. The government did, however, introduce the series of checks in support of the money laundering charge. Sixteen checks, as well as the identity of France's brother who cashed them, were identified by a government

3

witness and admitted into evidence. The record demonstrates not only did the same prosecutor who obtained those checks from France during the course of his grand jury testimony introduce them into evidence, the government also acknowledged, prior to trial, that it had no independent source for the information concerning France's brother and would, therefore, be unable to introduce such at the trial.

With respect to the immunized testimony which France argues indirectly supported the conspiracy count, the court found that an independent investigation conducted by the investigating agents revealed the extent of France's involvement in the drug conspiracy at issue. The court relied on evidence of interviews with witnesses, other than France, conducted prior to France's grand jury testimony, which established his involvement with Mrs. King and Charles Hairston. Mrs. King then became the government's primary witness against France. Furthermore, the court emphasized that nothing in France's grand jury testimony bore any relevance to the conspiracy charge. The district court found that, because France lied about the nature of his involvement with his co-conspirators, the information that he gave the grand jury was not, itself, helpful to the government, nor did it provide the government with any investigative leads.

It also found that, regardless of when Mrs. King and Hairston were actually interviewed, the government knew of their involvement with France before he ever took the witness stand. These findings of the district court were not clearly erroneous, nor was its determination that this knowledge constitutes a sufficient independent source for Kastigar purposes.

Establishing an independent source for the money laundering count is more difficult, but once again, with respect to the evidence claimed by France to have indirectly impacted his prosecution, the district court was not clearly erroneous in finding one. The government presented evidence at France's Kastigar hearing that a Currency Transaction Report filed in early 1996 provided the government with much of the critical information connecting France to Mrs. King's New Jersey bail. Interviews with two other witnesses named in that report filled in the gaps. Government agents cooperated with local officers to determine where France did his banking. All of this occurred prior to France's testimony before the grand jury. Furthermore, Chris Grif-

4

fen, the I.R.S. agent who worked on France's case, testified that he received France's bank statements for the period in question and the signature card from his account pursuant to a subpoena issued to France's bank. Griffin testified that he did not know of France's grand jury testimony when he procured the subpoena. Based on Agent Griffin's testimony, the district court determined that the government had a sufficient independent source. That determination was not clearly erroneous.

France's principal claim of error at this point, however, is over evidence pertaining to the money laundering count and rests on the series of checks, cashed by his brother, which the government obtained through France's grand jury testimony and then introduced at trial. The district court made no specific fact finding with respect to this evidence. Furthermore, France failed to object to its introduction at the time of trial. Thus, if we are to review this issue at all, we must review it for plain error under Fed. R. Cr. P. 52. See Johnson v. United States, 65 U.S.L.W. 4305, 4306 (U.S. May 12, 1997) (No. 96-203). Plain error review requires us to analyze the issue under the four part test set out by the Supreme Court in United States v. Olano, 507 U.S. 725 (1993), and discussed in Johnson, 65 U.S.L.W. at 4307. See United States v. Jarvis, 7 F.3d 404, 412-13 (4th Cir. 1993). First, there must indeed be error. Johnson, 65 U.S.L.W. at 4307 (quoting Olano, 507 U.S. at 732). Second, that error must be plain. Johnson, 65 U.S.L.W. at 4307 (quoting Olano, 507 U.S. at 732). Third, it must "affect substantial rights," and finally, it must "seriously affect the fairness, integrity, or public reputation of judicial proceedings." Johnson, 65 U.S.L.W. at 4307 (quoting Olano , 507 U.S. at 732 (citations omitted)).

There is no question that the government's introduction of the checks at issue and the accompanying reference to France's brother's participation constitute error. France delivered the checks to the government and referred to his brother's participation during his immunized grand jury testimony. The government put forth no evidence tending to establish an independent source for this evidence at France's Kastigar hearing, and in fact, admitted that it had no independent source for the information regarding France's brother. The government then proceeded to introduce that evidence at trial. Undoubtedly, that action violated the rule set forth in Kastigar, and

5

thus, constituted error under the first prong of the plain error analysis. Because the Supreme Court has interpreted "plain" as "synonymous with `clear' or, equivalently, `obvious,'" the government's conduct in this instance easily meets the second prong of the plain error test as well. Johnson, 65 U.S.L.W. at 4307 (quoting Olano, 507 U.S. at 734).

Having established error, which is plain, we must also consider whether it "affect[s] substantial rights." Johnson, 65 U.S.L.W. at 4307. In Olano, the Supreme Court expounded on this prong of the plain error analysis, saying "in most cases it means that the error must have been prejudicial: It must have affected the outcome of the district court proceedings." 507 U.S. at 734. The Court likened this inquiry to the harmless error analysis provided for by Rule 52(a). See Olano, 507 U.S. at 734.

As well as introducing the checks France complains about, the government introduced the bank statement from France's checking account which covered the very withdrawals accomplished by those checks. That statement noted a series of nine thousand nine hundred dollar withdrawals from France's bank account. Therefore, any further reference to the amounts of the withdrawals was merely cumulative. The jury had access, via France's bank statement, to the very same information that the checks revealed. We hold that the introduction of the sixteen checks was not prejudicial because merely cumulative and harmless beyond a reasonable doubt. Harris, 973 F.2d at 338.

Likewise, the government's referral to France's brother's participation during the introduction of those checks does not meet the requirement of affecting substantial rights for plain error review. France's brother's participation simply does not tend to establish guilt. Therefore, its mention was harmless beyond a reasonable doubt and not reversible error.

As plain error has not been established, we do not reach the final hurdle for an appellate court seeking to correct plain error which involves a determination that "the forfeited error `seriously affect[s] the fairness, integrity, or public reputation of judicial proceedings.'" Johnson, 65 U.S.L.W. at 4308 (quoting Olano, 507 U.S. at 736 (citations omitted)).

6

We hold that the factual findings made by the district court in accordance with Kastigar were not clearly erroneous. That being so, and the introduction of the two items of evidence (the checks and the reference to France's brother) in violation of Kastigar, being harmless beyond a reasonable doubt, the district court correctly did not dismiss the indictment.

B.

France also questions the sufficiency of both counts of his perjury indictment and as well the sufficiency of the evidence to support the conviction. The indictment was under 18 U.S.C. § 1623(a), which provides that a statement under oath before a grand jury if false, material, and knowingly made, constitutes a crime.

The indictment charged that on August 27, 1996, before the federal grand jury in Greensboro, France testified that he had not named Tommy McBride as the person who had gotten him the cocaine that he had sold to Jackie Stewart, and further, that he had not told one of the investigating officers that he had gotten cocaine from Tommy McBride. It also charged that, on or about October 28, 1996, before the Greensboro grand jury, France testified that he had not told the investigating officers that he had gotten cocaine from Tommy McBride. At trial, however, the officers testified that France had told them as charged that he had received cocaine from McBride.

The jury convicted, simply believing the officers. We are of opinion the testimony of the officers was sufficient to support the convictions and that France's objection to the indictment is without merit.

C.

France also questions the sufficiency of the evidence against him regarding the money laundering count arising out of the procurement of Mrs. King's appearance bond. If, when viewed in the light most favorable to the government, substantial evidence supports the jury's verdict, that verdict must be upheld. Glasser v. United States, 315 U.S. 60, 80 (1942).

7

Money laundering under 18 U.S.C. § 1956 requires: (1) that the defendant conduct a financial transaction with at least a de minimis effect on interstate commerce; (2) that the transaction involved the proceeds of a specified unlawful activity; (3) that the defendant knew that those proceeds were derived from that specific unlawful activity; and (4) that the defendant engaged in the transaction intending to promote that unlawful activity. See United States v. Wilkinson, 137 F.3d 214, 220 (4th Cir. 1998). The government's evidence showed that France posted bond for Mrs. King to secure her release during the pendency of her New Jersey drug charges. The posting of bond constitutes a sufficient financial transaction for money laundering purposes. See United States v. Laurenzana, 113 F.3d 689, 692 (7th Cir. 1997). The legality of posting bond is irrelevant. The statute requires only that the proceeds used in that transaction be derived from unlawful activity and that the defendant's intent be to promote the unlawful activity in question. 18 U.S.C. § 1956(a)(1)(A)(I). In this case, the government put on evidence of France's involvement with Mrs. King and McBride in illegal drug trafficking. In fact, Mrs. King made regular trips to New York to buy drugs for France and McBride. The government's evidence further tended to show that even though McBride claimed ownership of the $180,000 in question, that France handled the money and ran it through his bank account, and that France was not reporting enough legitimate income to establish a legal source for that sum of money. Taken together, this constitutes substantial, albeit circumstantial, evidence that France used drug money to post Mrs. King's bail and that he did so in furtherance of his drug trafficking activity. The jury's verdict is sustained.

D.

France contends that his offense level was erroneously enhanced both for his role in the offense and for obstruction of justice. Courts of appeal review applications of the United States Sentencing Guidelines that depend on findings of fact under a clearly erroneous standard; legal determinations are reviewed de novo . United States v. Jones, 31 F.3d 1304, 1315 (4th Cir. 1994); United States v. Daughtrey, 874 F.2d 213, 217 (4th Cir. 1989). A sliding scale is used for issues which are mixed questions of law and fact. Jones, 31 F.3d at 1315; Daughtrey, 874 F.2d at 217.

8

France makes no argument on appeal as to why he believes the two point obstruction of justice enhancement to be erroneous. He merely claims that it is. According to U.S.S.G. (1995)§ 3C1.1, Application Note 3(b), committing perjury is cause for the enhancement. Factually, there is no question but that a jury convicted France of perjury. Legally, Application Note 6 to § 3C1.1, forbids the application of the enhancement, without evidence of further obstruction, to the offense level for a perjury conviction. France's guidelines, however, were calculated based on an offense level of 32 for his drug conviction, not the lesser offense level for his perjury conviction. Therefore, the enhancement is proper under Application Note 3(b).

Neither is France's contention regarding the impropriety of his three level enhancement based on his role in the offense justified. Section 3B1.1(b) of the Guidelines calls for a three level offense level increase when a defendant "was a manager or supervisor (but not an organizer or leader) and the criminal activity involved five or more participants." The government clearly established the participation of more than five individuals in this drug operation. France, McBride, Hairston, and Mrs. King make four, and the government presented evidence of two other men, Barry France and Deemus Chambers, who accompanied Mrs. King on buying trips for Edgar France and McBride. Furthermore, Mrs. King testified that Edgar France recruited her to join the conspiracy, that he along with McBride provided the money that she used to purchase cocaine in New York City, and that most of her contact with the conspiracy came through Edgar France.

Even so, the district court did not, as France suggests, "subscribe in wholesale fashion to the government's motion for enhancement." Considering the evidence, the court actually rejected the government's suggestion that France's conduct warranted a four level enhancement for a leader or organizer and instead, applied the three level enhancement properly attributed to a supervisor. Application Note 2 to Guideline § 3B1.1 applies this adjustment to a defendant who acts as the "supervisor of one or more other participants." In light of the evidence regarding France's relationship with Mrs. King, we cannot say that the district court's determination that France acted as a supervisor was clearly erroneous.

9

E.

France's final contention regards the district court's decisions to admit certain evidence at trial. Evidentiary rulings as to relevancy are reviewed under an abuse of discretion standard. United States v. Zandi, 769 F.2d 229, 237 (4th Cir. 1985). We find no abuse of discretion in this case.

The evidence in question concerns the testimony of Darrell Leonard that he sold drugs for McBride and that during the course of their involvement, McBride assaulted him. This was the extent of Leonard's testimony. He did not know Edgar France, and he never conducted any business with him, illegal or otherwise. Thus, France contends that this evidence was inflammatory and prejudicial.

The district court, however, limited the introduction of Leonard's testimony to that concerning the time period during which France and McBride were conspiring to distribute cocaine. As a co-conspirator, France is responsible for any acts of McBride within the scope and in furtherance of the conspiracy. United States v. Irvin, 2 F.3d 72, 75 (4th Cir. 1993). Leonard's testimony may have pertained to points in the chain of distribution in which France was not directly involved, but, as part of the overall conspiracy, he bears responsibility for them nevertheless. The court did not abuse its discretion in admitting Leonard's testimony.

III.

Although it is likely whistling in the wind, we feel it necessary to remark that many, or perhaps most, of the reversals and new trials following convictions in criminal cases are brought on by overkill or like overzealous or reckless prosecution on the part of the government. In this case, the government did not follow the admonition of this court in Harris, and other courts, that the government show that prosecuting officials were aware of the immunity problem and follow reliable procedures for segregating the immunized testimony and its fruits from officials pursuing any subsequent investigations. See Harris, 973 F.2d at 336-338.

10

That the Department of Justice recognizes the problem is shown by the recommendation in its manual that prosecution of a compelled witness be handled by an attorney unfamiliar with the substance of the compelled testimony. In the prosecution of France, the government took little or no account of these precautions and is saved from reversal only by our application of the plain error rule.

The convictions and sentence of France are accordingly

<u>AFFIRMED</u>.

11