Filed: June 19, 2001

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

No. 99-4882
(CR-99-133)

United States of America,

Plaintiff - Appellee,

versus

Leslie Paul Williams,

Defendant - Appellant.

O R D E R

The court amends its opinion filed June 15, 2001, as follows:

On page 4, first paragraph, line 4 -- the citation to United States v. Daughtrey is corrected to begin "874 F.2d 213."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

PUBLISHED

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
Plaintiff-Appellee,

v.                                                            No. 99-4882

LESLIE PAUL WILLIAMS,
Defendant-Appellant.

Appeal from the United States District Court
for the Middle District of North Carolina, at Durham.
James A. Beaty, Jr., District Judge.
(CR-99-133)

Argued: November 1, 2000

Decided: June 15, 2001

Before MICHAEL, MOTZ, and KING, Circuit Judges.

_____

Affirmed by published opinion. Judge King wrote the opinion, in
which Judge Motz joined. Judge Michael wrote an opinion concurring
in part and concurring in the judgment.

_____

COUNSEL

**ARGUED:** David Bruce Freedman, WHITE AND CRUMPLER,
Winston-Salem, North Carolina, for Appellant. Lawrence Patrick
Auld, Assistant United States Attorney, Greensboro, North Carolina,
for Appellee. **ON BRIEF:** Walter C. Holton, Jr., United States Attor-
ney, Greensboro, North Carolina, for Appellee.

_____

**OPINION**

KING, Circuit Judge:

Leslie Paul Williams pleaded guilty in the Middle District of North Carolina to an indictment charging that he mailed, transported, and shipped child pornography in interstate commerce. Williams appeals the sentence imposed on his conviction, contending that his conduct did not involve "distribution" within the meaning of § 2G2.2(b)(2) of the United States Sentencing Guidelines Manual. For the reasons that follow, we reject this contention and affirm the district court's imposition of sentence.

I.

On June 2, 1997, Williams mailed child pornography from his home in Winston-Salem, North Carolina, to Michael Walton in Brownsville, Texas. The materials were photocopies of magazine pictures, one of which depicted a nude boy bound and held upside-down by another, while a third looked on. A UPS employee opened the mailing and discovered the pictures after a drug dog had alerted to the package.

Williams pleaded guilty to a single count of violating 18 U.S.C. § 2252A(a)(1) and (b)(1), which together provide that "[a]ny person who . . . knowingly mails, or transports or ships in interstate or foreign commerce by any means . . . any child pornography . . . . shall be fined under this title or imprisoned not more than 15 years, or both . . . ." Subsection (a)(2) of the same statute, of which Walton was ultimately convicted in the Southern District of Texas, prohibits the knowing receipt of such materials.

Williams was sentenced pursuant to U.S. Sentencing Guidelines Manual § 2G2.2 (1998), entitled "Trafficking in Material Involving the Sexual Exploitation of a Minor; Receiving, Transporting, Shipping, or Advertising Material Involving the Sexual Exploitation of a Minor; Possessing Material Involving the Sexual Exploitation of a Minor with Intent to Traffic," which carries a base offense level of 17.**1**

_____

**1** By comparison, § 2G2.4 applies in cases involving the mere "Possession of Materials Depicting a Minor Engaged in Sexually Explicit Con-

2

The district court adopted the probation officer's recommendations that the base offense level be increased by two because a prepubescent minor was involved [§ 2G2.2(b)(1)]; increased another four levels because at least some of the material portrayed sadistic or masochistic conduct [§ 2G2.2(b)(3)]; and increased five more levels with the application of § 2G2.2(b)(2), which provides:

> If the offense involved distribution, increase by the number of levels from the table in § 2F1.1 corresponding to the retail value of the material, but in no event by less than 5 levels.[2]

In partial offset, Williams received a three-level reduction for acceptance of responsibility. The adjusted offense level of 25, combined with Williams's lack of prior convictions (Criminal History Category I), produced a sentencing range of 57-71 months. In accordance with the specified range, the district court imposed a sentence of sixty months' imprisonment. Williams appeals, contesting only the five-level increase under § 2G2.2(b)(2) for "distribution."

II.

We employ a fluid standard of review with respect to sentences imposed under the Guidelines Manual. Insofar as the proper application of the Guidelines turns predominantly on one or more findings of fact, we review the district court's findings for clear error. <u>United States v. France</u>, 164 F.3d 203, 209 (4th Cir. 1998) (citations omitted). Conversely, to the extent that the dispute involves a legal determination, our review is de novo. <u>Id.</u> Mixed questions of law and fact are reviewed along the resultant continuum, i.e.,"a sliding scale depending upon whether the issues are essentially factual or legal in

_____

duct," and it assigns a base offense level of 15. The simple possession of such materials that have been mailed, shipped, or transported in interstate commerce is proscribed by § 2252A(a)(5).

[2] Section 2F1.1(b)(1) increases the base offense level in fraud cases up to an additional 18 levels, depending on the amount of loss. An increase beyond the minimum five levels is reserved for losses exceeding $70,000. It is undisputed that the retail value of the materials involved in this case is nominal.

3

nature[.]" <u>United States v. Jones</u>, 31 F.3d 1304, 1315 (4th Cir. 1994). In these hybrid situations, we give due deference to the district court's application of the Guidelines to the pertinent facts. <u>United States v. Daughtrey</u>, 874 F.2d 213, 217 (4th Cir. 1989).

III.

A.

Williams maintains that, because the effect of applying § 2G2.2(b)(2) varies depending on the retail value of the materials involved, the "distribution" referenced therein must be one for pecuniary gain. In support of his argument, Williams directs our attention to Application Note 1 of the guideline, which provides that "[d]istribution <u>includes</u> any act related to distribution for pecuniary gain, including production, transportation, and possession with intent to distribute." U.S. Sentencing Guidelines Manual § 2G2.2, cmt. n.1 (1998) (emphasis added).

We agree that distributions for pecuniary gain are "distributions" within the meaning of the guideline. It does not necessarily follow, however, that distributions effected without a profit motive are thereby excluded. <u>See id.</u> § 1B1.1, cmt. n.2 (noting that, in setting forth general application principles for the Guidelines, "[t]he term `includes' is not exhaustive").

Five courts of appeals have concluded that the word "distribution" in § 2G2.2 should be accorded its "ordinary meaning," that is, the increase applies to a broader range of disseminations than those made solely for pecuniary gain. <u>See United States v. Probel</u>, 214 F.3d 1285, 1287-91 (11th Cir.), <u>cert. denied</u>, 121 S. Ct. 331 (2000); <u>United States v. Imgrund</u>, 208 F.3d 1070, 1072-73 (8th Cir. 2000); <u>United States v. Lorge</u>, 166 F.3d 516, 518-19 (2d Cir.), <u>cert. denied</u>, 526 U.S. 1058 (1999); <u>United States v. Hibbler</u>, 159 F.3d 233, 237-38 (6th Cir. 1998) (2-1 decision), <u>cert. denied</u>, 526 U.S. 1030 (1999); <u>United States v. Canada</u>, 110 F.3d 260, 263-64 (5th Cir.), <u>cert. denied</u>, 522 U.S. 875 (1997).**3**

_____

**3** In the Second and Eleventh Circuits, it appears that any dissemination is a distribution. <u>See Lorge</u>, 166 F.3d at 518 ("The ordinary meaning of

4

Two circuits have held to the contrary. See United States v. Laney, 189 F.3d 954, 958-61 (9th Cir. 1999) (2-1 decision); United States v. Black, 116 F.3d 198, 202-03 (7th Cir.) (2-1 decision), cert. denied, 522 U.S. 934 (1997). The district court here adopted the minority view of the Seventh and Ninth Circuits, but it nonetheless found the distribution made by Williams to have been for pecuniary gain.

Each of the courts expressing the majority view have relied on the "ordinary meaning" and "non-exhaustive application of `includes'" rationales explained above. In addition, one judge has argued for a broad reading of the § 2G2.2(b)(2) distribution enhancement by comparing it to its analogue in the obscenity trafficking guideline. See Laney, 189 F.3d at 967-68 (Nelson, J., specially concurring). That provision, § 2G3.1(b)(1), accords a five-or-more-level increase only

_____

distribution involves an act or series of acts without regard to the actor's motive."); Probel, 214 F.3d at 1288 ("[B]ased on the plain language of the Guidelines and the application notes, pecuniary or other gain is not required."). The Eleventh Circuit in Probel broadened its prior holding in United States v. Garrett, 190 F.3d 1220, 1223 (11th Cir. 1999), in which the court upheld the five-level enhancement as applied to a distribution for "valuable" gain, i.e., the nonpecuniary purpose of luring a minor female into sexual relations.

The positions taken by the Fifth and Eighth Circuits have been, to this point, somewhat more narrow. See Canada, 110 F.3d at 263 (enhancement appropriate where defendant motivated not by pecuniary gain, but "with a purpose of enticing another person to have sex with him"); Imgrund, 208 F.3d at 1072 ("`[D]istribution' is not limited to cases in which a defendant obtained a pecuniary gain by disseminating child pornography. . . . Purely gratuitous dissemination, however, will not trigger the § 2G2.2(b) enhancement. . . .") (citing United States v. Horn, 187 F.3d 781, 791 (8th Cir. 1999), cert. denied, 120 S. Ct. 1442 (2000), for the former proposition).

The Sixth Circuit adopted the general reasoning of Canada in holding that the enhancement was "not limited solely to instances involving distribution for pecuniary gain," Hibbler, 159 F.3d at 238, but it did not follow the Fifth Circuit's lead to the extent that Canada can be read to require identification of some purpose behind the defendant's dissemination. Consequently, we believe the rule in the Sixth Circuit to be commensurate with the broader version espoused by the Second and Eleventh Circuits.

5

"[i]f the offense involved an act related to distribution for pecuniary gain." According to Judge Nelson, the lack of similarly restrictive language in § 2G2.2(b)(2) evinces the drafters' "clear choice to give heavier sentences to those who engage in child pornography offenses." Laney, 189 F.3d at 968; see also United States v. Horn, 187 F.3d 781, 791 (8th Cir. 1999) ("If Congress had intended § 2G2.2(b)(2) to apply only to distribution for pecuniary gain, it could easily have said so directly."), cert. denied, 120 S. Ct. 1442 (2000).

We are inclined toward the more expansive, "natural" reading favored by the majority of our sister circuits. But we must first satisfy ourselves that (1) the application of the enhancement does not swallow the basic conduct, i.e., there are a significant number of situations where the increase would not apply; and (2) there is a sufficient reason -- grounded in logic, policy, or both -- to apply the increase to all distributions, not just those made for pecuniary gain.

Both of these conditions exist here. The enhancement would not apply to those in the trafficking chain who are convicted under the applicable statutes of merely receiving or advertising child pornography. The distinction is far from hypothetical; as a consequence of the mailing at issue in this very case, Walton was convicted of receipt in the Southern District of Texas. Inasmuch as Walton was not subject to the five-level increase, his resultant sentence of forty months' imprisonment was considerably more lenient than that imposed on Williams.

The difference in treatment makes sense, however, because those who dispense child pornography ought to be punished more severely than those who do not. Indeed, in both Canada and Garrett, see supra note 3, the defendant distributed the prohibited materials for the purpose of persuading a minor to engage in sexual relations. If § 2G2.2(b)(2) were to be read in the narrowly circumscribed fashion urged by Williams, these dangerous types of defendants would face no greater penalty than Walton did for simply receiving a package. The less restrictive reading that we endorse today, however, will appropriately facilitate the government's overriding interest in "shield[ing] all children from sexual exploitation resulting from child pornography[.]" United States v. Mento, 231 F.3d 912, 920 (4th Cir.

6

2000), <u>petition for cert. filed</u>, ___ U.S.L.W. ___ (U.S. Jan. 22, 2001) (No. 00-8114).**4**
_____

**4** Congress has recently reaffirmed this interest through its actions regarding the very guideline at issue here. <u>See</u> Protection of Children from Sexual Predators Act of 1998, Pub. L. No. 105-314, § 506, 112 Stat. 2980, 2982, <u>reprinted in</u> 28 U.S.C. § 994 Historical and Statutory Notes. Therein, Congress directed the Sentencing Commission to amend the Guidelines to clarify that the term "distribution," as it is used in § 2G2.2(b)(2), means distribution <u>either</u> for monetary remuneration <u>or</u> for a nonpecuniary interest.

The amended guideline, in effect since November 1, 2000, retains the minimum five-level enhancement under the cross-reference to § 2F1.1 if the distribution was for pecuniary gain [§ 2G2.2(b)(2)(A)]; provides a flat five-level increase for a nonpecuniary distribution made for the receipt (or in the expectation of receipt) of a "thing of value" [§ 2G2.2(b)(2)(B)]; specifies a five-level enhancement for any distribution to a minor [§ 2G2.2(b)(2)(C)], unless such distribution "was intended to persuade, induce, entice, coerce, or facilitate the travel of[ ] the minor to engage in prohibited sexual conduct," in which case the enhancement is seven levels [§ 2G2.2(b)(2)(D)]. For all other distributions, the Commission has mandated a two-level increase [§ 2G2.2(b)(2)(E)]. Application Note 1 has likewise been amended to define "distribution" as "any act . . . related to the transfer of material involving the sexual exploitation of a minor."

A clarification, of course, is just that -- an explanation of a perceived ambiguity; the need for clarifying language does not necessarily work a change in the guideline's original meaning. Indeed, if we believed that Congress's instructions to the Commission amounted to a substantive amendment of § 2G2.2(b)(2), we would be constrained to vacate the five-level enhancement and remand this case to the district court for Williams to be resentenced.

Unfortunately, clear evidence of the original intent behind the guideline simply does not exist. In a 1991 letter to Congress, our colleague Judge Wilkins, then-Chairman of the Sentencing Commission, stated his view that the five-level adjustment under § 2G2.2(b)(2) applied "if the offense involved for-profit distribution." 137 Cong. Rec. H6736-02, H6737, <u>cited in Laney</u>, 189 F.3d at 960 n.6. Though making plain that distributions for pecuniary gain merit the increase, the letter does not indicate that the Commission intended the guideline to apply exclusively to such distributions.

Other potential disparities in treatment among certain classes of defendants sentenced under § 2G2.2(b)(2) do not tilt us toward the minority view. The Ninth Circuit pointed out two such scenarios in Laney. The first is attributable to the minimum five-level enhancement under the cross-reference to § 2F1.1(b)(1). See supra note 2. In fraud cases, the enhancement ranges from zero levels (for losses of $2,000 or less) to eighteen levels (for losses exceeding $80 million). A five-level increase is prescribed for losses ranging in excess of $40,000 up to $70,000. By its cross-reference to the fraud guideline, § 2G2.2(b)(2) adopted, for child pornography convictions, the specified ranges corresponding to the retail value of the materials distributed, except to the extent that the minimum enhancement was mandated. Consequently, a five-level increase applies to all distributions of $70,000 or less.

The Ninth Circuit opined that the Commission's gradation of punishment depending on retail value was evidence of its intent to apply § 2G2.2(b)(2) only to transactions for pecuniary gain; it then rejected the Second Circuit's contrary conclusion that the sentencing scheme was fundamentally a proxy for quantity:

> We are not persuaded that, as the Lorge court suggests, the drafters saw a need to distinguish between a commercial pornographer who sells $40,000 worth of material and one who sells $80,000 worth, but not between a person who gives away a magazine and one who markets $40,000 worth of magazines.

Laney, 189 F.3d at 960. This analysis misses the point. Although the guideline fails to distinguish a for-profit distribution of $40,000 (or even $70,000) from one made wholly gratuitously, it also accords precisely the same punishment to a commercial pornographer who distributes materials worth only a few dollars. The value of the illicit goods -- correlating to the harm caused by their distribution -- is the basis for the distinction, not the character of the transaction.

The second potential disparity addressed by the Ninth Circuit concerns the Application Note 1 language that distribution "includes any act related to distribution for pecuniary gain," identifying specifically the prefatory acts of production, transportation, and possession with

8

intent to distribute.[5] Because these same acts would presumably be immune from the enhancement if they instead facilitated a gratuitous distribution, the Ninth Circuit reasoned:

> If the Guidelines' drafters intended section 2G2.2(b)(2) to penalize the person who gratuitously gives a single pornographic image to another person as severely as the commercial retailer of child pornography, we see no convincing reason why they would not similarly have chosen to penalize the former person's acts of production, transportation, and possession.

Laney, 189 F.3d at 959-60.

The answer to the Ninth Circuit's query lies in its overstated premise. Contrary to the concern expressed by our sister circuit, the person who gives away a single photograph will generally not be punished as severely as the commercial pornographer. Indeed, we suspect that in most trafficking prosecutions, the participants' inventories will be more than sufficient to exceed the $70,000 ceiling on the five-level enhancement. See Black, 116 F.3d at 203 n.1 (Manion, J., dissenting) ("The cross-reference to [§ 2F1.1] for sexual exploitation of minors targets large distributors who could be trafficking in pornography worth hundreds of thousands, even millions, of dollars."); United States v. Kemmish, 120 F.3d 937, 940 (9th Cir. 1997) (child pornography seized with retail value in excess of $2.9 million). Granting the possibility, however, that the occasional small-time retailer may be fortunate enough to receive only the minimum enhancement, we are hardly convinced that the logical consequence thereof is the immuni-

_____

[5] The Application Note does not mention "shipping," although the shipping of child pornography is among those activities prohibited by the underlying statute and -- like production, transportation, and possession with intent to distribute -- clearly within the ambit of § 2G2.2. The Note's omission gives us no pause, however, because the drafters' use of the word "includes" reveals their intent that the list be merely illustrative. Just as distributions for pecuniary gain are not the only distributions subject to an offense level enhancement, the acts of trafficking listed in Application Note 1 are not the only ones "related to distribution for pecuniary gain."

9

zation of those who, motivated by reasons other than profit, cause equivalent harm.

B.

1.

Even if Williams is correct that the § 2G2.2(b)(2) enhancement requires the referenced distribution to be one for pecuniary gain, he would not be entitled to resentencing. Though Williams maintains that his transaction with Walton did not qualify as a distribution for pecuniary gain, the lower court concluded otherwise, and we agree.

The district court found that Williams mailed the pornography to Walton in the expectation that he would receive similar materials in return. This type of bartering transaction is a distribution for pecuniary gain to the extent that the items bargained for have any value at all. See Black, 116 F.3d at 202-03 ("[P]ecuniary gain is a broad concept itself, and it does not exclude the possibility of swaps, barter, in-kind transactions, or other valuable consideration."); cf. U.S. Sentencing Guidelines Manual § 2Q2.1, cmt. n.1 (1998) (defining offense-level increase "for pecuniary gain" in context of fish, wildlife, and plant offenses as "for receipt of, or in anticipation of receipt of, anything of value, whether monetary or in goods or services. Thus, offenses committed for pecuniary gain include both monetary and barter transactions.").

2.

The district court based its decision that a barter occurred on the probation officer's testimony recounting her interview of Williams. During his conversation with the probation officer, Williams mentioned that he liked art and photography, and that he and Walton had "decided that they were gonna swap a few things." J.A. 69. Although Williams now asserts that he was referring to comic books, the probation officer testified that she understood Williams to instead mean pictures of the same type that he had sent to Walton. See Fed. R. Evid. 701 (permitting lay testimony in the form of opinions or inferences that are "rationally based on the perception of the witness" and "help-

10

ful to a clear understanding of the witness' testimony or the determination of a fact in issue"). The district court did not err, legally or factually, in crediting the probation officer's testimony. Moreover, her testimony is sufficient to establish that a barter of pornography was intended.

IV.

Pursuant to the foregoing, we affirm the sentence imposed on Williams.

<u>AFFIRMED</u>

MICHAEL, Circuit Judge, concurring in part and concurring in the judgment:

I respectfully disagree with the majority's conclusion that the "distribution" referred to in U.S.S.G. § 2G2.2(b)(2) (1998) does not have to be for pecuniary gain. Section 2G2.2(b)(2) calls for an enhancement "[i]f the offense involved distribution" of child pornography. "Distribution," according to Application Note 1, "includes any act related to distribution for pecuniary gain, including production, transportation, and possession with intent to distribute." One question in this appeal is whether pecuniary gain must be a goal of distribution before § 2G2.2(b)(2)'s enhancement is triggered. I am convinced that it must be.

The majority's interpretation of the guideline and the application note -- that a showing of pecuniary gain is not required -- boils down to two steps. First, the majority points out that the guideline itself, § 2G2.2(b)(2), does not mention pecuniary gain. It simply provides for an enhancement if the defendant engaged in distribution. Thus, unless the application note says otherwise, a showing of pecuniary gain is not required. Second, the majority states that the application note's use of the word "includes" in "`Distribution' <u>includes</u> any act related to distribution for pecuniary gain" is not exhaustive. The note, according to the majority, simply provides an example of what constitutes distribution, that is, an "act related to distribution for pecuniary gain." The majority therefore reduces the reference to pecuniary

11

gain to a needless reminder that if the distribution is for pecuniary gain, it is still distribution and qualifies for the enhancement. There is nothing in the guideline that makes this reminder necessary, especially since the guideline by itself would cover all distribution. Thus, under the majority's interpretation the words "for pecuniary gain" in the application note become meaningless and useless. The majority's interpretation violates a fundamental canon of statutory construction -- "that significance and effect shall, if possible, be accorded to every word." Washington Market Co. v. Hoffman, 101 U.S. 112, 115 (1879).

Our charge is to interpret the application note so that the term "for pecuniary gain" is given meaning. "For pecuniary gain" can be given meaning only if the words serve as a limitation on conduct that constitutes distribution. What then is the extent of the limitation? It might be said that this limitation should apply only to the conduct that is added in the application note. Specifically, a showing of pecuniary gain would be required only when the defendant engages in an "act related to distribution . . . [such as] production, transportation, and possession with intent to distribute." This approach, however, would create an unsupportable distinction between "acts related to distribution" and "actual distribution." There is no reason why a defendant who engages in an act related to distribution must act with pecuniary motive, but a defendant who actually distributes need not. Because this distinction is unsupportable, we should interpret "for pecuniary gain" as a limitation on all conduct constituting distribution. In short, the only logical reason for using the words "for pecuniary gain" is to limit the meaning of distribution. Distribution therefore means distribution for pecuniary gain.

This interpretation is consistent with the plain language of the application note. The note states that distribution "includes any act related to distribution for pecuniary gain." The word "includes" signals that an "act related to distribution" is simply an illustration of what constitutes distribution. In other words, the use of "includes" indicates that other conduct, in addition to actual distribution, may constitute distribution. The word "includes," however, has no impact on the term "for pecuniary gain." The term "for pecuniary gain" modifies "distribution" and signifies that the core conduct under the guideline is "distribution for pecuniary gain," not simply distribution.

12

Application Note 1 is not a model of clarity. Nevertheless, the only fair and sensible reading of the note is that the words "for pecuniary gain" limit "distribution" to "distribution for pecuniary gain." For this reason, I must respectfully decline to join part II.A. of the majority opinion. Because I agree with the majority's conclusion that Williams's transaction qualifies as a distribution for pecuniary gain, I concur in part II.B. and in the judgment.

13