Filed:  January 31, 2002

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 99-4720(L)
(CR-98-48-WMN)

United States of America,

Plaintiff - Appellee,

versus

John Edward Jones, Jr., et al.,

Defendants - Appellants.

O R D E R

The court further amends its opinion filed September 6, 2001, and modified December 18, 2001, as follows:

On page 2, section 5 -- counsel's name is corrected to read "Sol Zalel Rosen."

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

UNITED STATES COURT OF APPEALS

FOR THE FOURTH CIRCUIT

Nos. 99-4720(L)
(CR-98-48-WMN)

United States of America,

Plaintiff - Appellee,

versus

John Edward Jones, Jr., etc., et al.,

Defendants - Appellants.

O R D E R

The court amends its opinion filed September 6, 2001, as follows:

On page 4, footnote 2 is deleted, and is replaced with the following:

> 2 Jones also maintains on appeal that the district court erred by failing to instruct the jury on the lesser-included offense of misdemeanor possession of marijuana. It appears that Jones did not request a lesser-included offense instruction, nor did he object to the district court's failure to give such an instruction. Accordingly, we review for plain error under the standards set forth in United States v. Olano, 507 U.S. 725,732-37 (1993). A defendant is not automatically entitled to a lesser-included offense instruction. See United States v. Wright, 131 F.3d 1111, 1112 (4th Cir. 1997). Rather, the trial court should give the instruction only if "the proof of the element that differentiates the two offenses

[is] sufficiently in dispute that the jury could rationally find the defendant guilty of the lesser offense but not guilty of the greater offense." Id. Even if we assume that the district court committed plain error in failing to give a lesser-included offense instruction on simple possession of marijuana, Jones cannot establish that the error affected his substantial rights. See Olano, 507 U.S. at 734. As we explain in part II, there was ample evidence to support the jury's finding that Jones was guilty of conspiring to distribute drugs. For example, one witness testified that he bought heroin from Jones. In contrast, the only evidence to support a verdict of simple possession was the relatively small quantity of drugs actually seized and Jones's testimony at trial that he was "embarrassed" to be in federal court for "three bags of reefer" because "[i]f [he] was in drugs, [he would] be selling drugs, not no nickel and dime case like they got [him] on here." If the jury had credited Jones's testimony and had been willing to infer a lack of intent to distribute from the amount of drugs seized, it would have voted to acquit him. Instead, it convicted him of conspiring to distribute drugs. As a result, Jones cannot establish that the outcome of his trial would have been different if the jury had been instructed on the lesser-included offense of simple possession of marijuana. See id. His jury instruction argument therefore fails.

For the Court - By Direction

/s/ Patricia S. Connor
Clerk

**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 99-4720

JOHN EDWARD JONES, JR., a/k/a
Liddy,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 99-4752

JAMES ADDISON CROMER, a/k/a
Brother,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Petitioner-Appellee,</u>

v.                                                    No. 99-4775

JOYCE YVONNE COTTOM,
<u>Defendant-Appellant.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                    No. 99-4776

AARON LILES,
<u>Defendant-Appellant.</u>

Appeals from the United States District Court
for the District of Maryland, at Baltimore.
William M. Nickerson, District Judge.
(CR-98-48-WMN)

Argued: May 9, 2001

Decided: September 6, 2001

Before WILKINS, MICHAEL, and TRAXLER, Circuit Judges.

_____

Affirmed in part, vacated in part, and remanded by unpublished per
curiam opinion.

_____

## COUNSEL

**ARGUED:** Sol Zalel Rosen, Washington, D.C., for Appellant Jones;
W. Michel Pierson, PIERSON, PIERSON & NOLAN, Baltimore,
Maryland, for Appellant Cromer; Harry D. McKnett, Columbia,
Maryland, for Appellant Cottom; Marc Seguinot, SMITH &
GREENE, L.L.C., Fairfax, Virginia, for Appellant Liles. Andrea L.
Smith, Assistant United States Attorney, Baltimore, Maryland, for
Appellee. **ON BRIEF:** Stephen M. Schenning, United States Attor-
ney, Jane M. Erisman, Assistant United States Attorney, Baltimore,
Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

## OPINION

PER CURIAM:

John Jones (a/k/a Liddy), James Cromer (a/k/a Brother), Joyce Cot-
tom, and Aaron Liles raise several challenges to their convictions and

2

sentences under 21 U.S.C. § 846 for conspiracy to distribute narcotics. As to Jones, we affirm his conviction but remand for resentencing in accordance with the statutory maximum sentence for conspiracy to distribute marijuana. As to Cromer, Cottom, and Liles, we affirm their convictions and sentences.

I.

The government's theory of the case is that in 1997 and 1998 Jones ran a drug and contraband distribution ring inside the Baltimore City Detention Center (BCDC) while he was an inmate at BCDC. The contraband included heroin, marijuana, cocaine, cigarettes, and cash. Cromer was an inmate housed in another area of BCDC who assisted Jones in the distribution. Jones's girlfriend, Cottom, helped Jones from outside BCDC by arranging for the contraband to be delivered to Jones and by receiving payments from the friends and family of the inmates who were the customers. Liles, the boyfriend of Cottom's granddaughter, assisted Cottom in collecting the money. Much of the government's evidence at trial consisted of recorded conversations obtained through a wiretap of Cottom's telephone between December 1997 and February 1998.

Jones, Cromer, Cottom, and Liles were indicted for conspiracy to distribute heroin and marijuana in violation of 21 U.S.C. § 846.[1] The indictment did not specify drug quantity. In addition, the government sought forfeiture of Cottom's house and car. The jury was asked to return a general verdict on whether the defendants were guilty of conspiracy to distribute narcotics, without specifying the type (marijuana or heroin). The jury found all four defendants guilty. The court imposed the following sentences of imprisonment: 210 months for Jones; 57 months for Cromer; 33 months for Cottom; and 30 months for Liles. In addition, Cottom's house and car were forfeited to the government.

II.

Defendants make various arguments in challenging their convic-
_____

**1** Other counts were not submitted to the jury.

3

tions and sentences. The first two issues are raised by more than one of the defendants: (1) all four argue that the trial court erred in allowing the jury to return a general verdict that did not specify drug type; and (2) Jones, Cromer, and Liles raise a sufficiency of the evidence argument. The remaining issues are defendant-specific. Jones argues that the district court's factual findings on drug quantity violated Apprendi v. New Jersey, 530 U.S. 466 (2000), and improperly relied on a government informant's testimony.[2] Cromer argues that the government's closing argument deprived him of a fair trial. Cottom maintains that the district court erred during sentencing in considering her involvement in heroin distribution and in ordering a forfeiture of her house. Liles argues that he should have been tried separately from the other defendants. We address these issues in turn.

A.

The first issue is whether the general verdict affects the validity of the defendants' sentences. The defendants requested a special verdict, which would have allowed the jury to specify whether they were convicting the defendants of a heroin conspiracy, a marijuana conspiracy, or both. The judge denied the request, and the jury returned a general verdict that did not specify drug type. Such a general verdict precludes the district court "from imposing a sentence in excess of the statutory maximum for the least-punished object on which the conspiracy conviction could have been based." United States v. Rhynes, 196 F.3d 207, 238 (4th Cir. 1999), vacated in part on other grounds, 218 F.3d 310 (4th Cir. 2000) (en banc). See also United States v. Bowens, 224 F.3d 302, 314 (4th Cir. 2000).

In this case the "least-punished object" of the conspiracy is marijuana distribution. If the quantity involved does not exceed 50 kilograms, this offense carries a maximum term of imprisonment of five years, but if the defendant has a prior conviction for a felony drug offense, the statutory maximum is ten years imprisonment. See 21 U.S.C. § 841(b)(1)(D). Cromer, Cottom, and Liles received sentences

_____

[2] Jones also maintains on appeal that the district court erred by failing to instruct the jury on the lesser-included offense of misdemeanor possession of marijuana. It appears that Jones did not request a lesser-included offense instruction, nor did he object to the district court's failure to give such an instruction. Accordingly, we review for plain error under the standards set forth in United States v. Olano, 507 U.S. 725,732-37 (1993). A defendant is not automatically entitled to a lesser-included offense instruction. See United States v. Wright, 131 F.3d 1111, 1112 (4th Cir. 1997). Rather, the trial court should give the instruction only if "the proof of the element that differentiates the two offenses [is] sufficiently in dispute that the jury could rationally find the defendant guilty of the lesser offense but not guilty of the greater offense." Id. Even if we assume that the district court committed plain error in failing to give a lesser-included offense instruction on simple possession of marijuana, Jones cannot establish that the error affected his substantial rights. See Olano, 507 U.S. at 734. As we explain in part II, there was ample evidence to support the jury's finding that Jones was guilty of conspiring to distribute drugs. For example, one witness testified that he bought heroin from Jones. In contrast, the only evidence to support a verdict of simple possession was the relatively small quantity of drugs actually seized and Jones's testimony at trial that he was "embarrassed" to be in federal court for "three bags of reefer" because "[i]f [he] was in drugs, [he would] be selling drugs, not no nickel and dime case like they got [him] on here." If the jury had credited Jones's testimony and had been willing to infer a lack of intent to distribute from the amount of drugs seized, it would have voted to acquit him. Instead, it convicted him of conspiring to distribute drugs. As a result, Jones cannot establish that the outcome of his trial would have been different if the jury had been instructed on the lesser-included

offense of simple possession of marijuana.  <u>See id</u>.  His jury in-
struction argument therefore fails.

4

of less than five years imprisonment. Therefore, the general verdict does not affect their sentences. Jones, however, received a sentence of 210 months imprisonment. The government filed an information indicating that Jones has at least one prior felony drug conviction. Therefore, the effect of the general verdict is that Jones's term of imprisonment cannot exceed 10 years. The government has conceded this error and has chosen the option of having Jones resentenced for conspiracy to distribute marijuana instead of retrying him for conspiracy to distribute heroin. See Rhynes, 196 F.3d at 240 (explaining that government can retry defendant or have him resentenced). Accordingly, we vacate Jones's sentence and remand to the district court for imposition of a sentence that does not exceed the ten-year statutory maximum set out in § 841(b)(1)(D).

B.

Jones, Cromer, and Liles argue that the government presented insufficient evidence to sustain their convictions. "The verdict of a jury must be sustained if there is substantial evidence, taking the view most favorable to the Government, to support it." Glasser v. United States, 315 U.S. 60, 80 (1942). To prove that Jones, Cromer, and Liles were guilty of conspiracy to distribute narcotics, the government must establish that: "(1) an agreement to possess [narcotics] with intent to distribute existed between two or more persons; (2) the defendant[s] knew of the conspiracy; and (3) the defendant[s] knowingly and voluntarily became a part of this conspiracy." United States v. Burgos, 94 F.3d 849, 857 (4th Cir. 1996). "These elements can be shown by circumstantial evidence such as [defendant's] relationship with other members of the conspiracy, the length of this association, his attitude, conduct, and the nature of the conspiracy." United States v. Collazo, 732 F.2d 1200, 1205 (4th Cir. 1984).

1.

Starting with Jones, we hold that the evidence was sufficient for a jury to find him guilty of conspiracy to distribute narcotics. George Timothy Hawkins, a BCDC guard, testified that beginning in late 1997, he began picking up marijuana and heroin from Cottom and delivering it to Calvin Bradshaw, an inmate in BCDC who was indicted along with the defendants in this case. On one occasion,

5

Hawkins was having a dispute with Bradshaw concerning how much money Hawkins was owed for a drug delivery. In order to settle the dispute, Jones gave Hawkins the money he was demanding. Troy Langley, a BCDC inmate, testified that he bought heroin from Bradshaw and from Jones. Willie Davis, another BCDC inmate, testified that several inmates obtained marijuana and heroin from Jones. Davis also explained the system of inmates' family members paying for the drugs by bringing money to a drop-off house.

The wiretapped conversations further confirm Jones's substantial involvement in the conspiracy. One conversation can be interpreted as Cottom explaining to Jones how much marijuana she obtained for him. She says, "I got what you asked for." Jones then inquires into the quantity: "I'm talking `bout what they give you. I know it wasn't like what the furniture man[3] give you.. . . [Y]ou ain't got no scale or nothing?" Cottom estimates that it is "like a, a half of an `O.'" Jones then tells Cottom to "take that back" because the marijuana suppliers "lied." When Cottom refuses, Jones says, "I say they lying baby. Less you, less you don't know, know how to test it. You shoulda `cause you been, you know." Jones testified that he was talking about herbal tea, but it was reasonable for the jury to discredit his testimony and conclude that he was actually talking about marijuana. Another conversation on that same day can be interpreted as Jones asking Cottom how much heroin Bey-Bey[4] gave her. Jones asks whether "[i]t's a handful . . . . I mean like, uh, big ball or something. . . . Like a golf ball." Cottom answers, "A little more than that I guess, you know. Cause it's not shaped like a ball is shape . . . ." In addition, there are

_____

[3] The evidence showed that the "furniture man" is Rodney Parham, who in addition to owning a furniture store is a marijuana dealer. Marijuana was found in the store. In one wiretapped conversation, Cottom told Liles that she would be buying marijuana from "Rodney" with the money Liles picked up for her. Furthermore, there are many conversations in which Cottom is ordering various pieces of furniture from Parham for Jones. The jury could have reasonably concluded that the large amount of furniture Jones was ordering was unbelievable and that instead, furniture was the code word for drugs.

[4] The evidence showed that Bey-Bey is Angelo Howard, a heroin dealer. Bags of heroin were found at Howard's house, as well as packaging and cutting materials with heroin residue.

conversations that can be interpreted as Cottom telling Jones which inmates' friends or family dropped off money for drugs. In those conversations, Cottom is listing names followed by dollar amounts, for example, "Marshall Hall. Twenty. Donte Stokes twenty. Ty a hundred." The testimony combined with the wiretap evidence is sufficient to sustain Jones's conviction.

2.

Turning next to Cromer, we hold that viewed in the light most favorable to the government, the evidence was sufficient for a rational jury to find Cromer guilty of a conspiracy to distribute narcotics. The wiretap evidence reveals Cromer's participation in the conspiracy. There are many conversations that the jury could have interpreted as evidence of Cromer's debt to Jones for the drugs that Cromer was distributing in BCDC. Christopher Bradshaw, a BCDC inmate who was indicted along with the defendants, asked Cottom about whether Cromer's wife gave Cottom the $140 that Cromer owed Jones, and Bradshaw added that Cromer "really owedest us more than that." Jones complained to Cottom about $400 that Cromer owed Jones. Jones also told Cottom that Cromer owed him $3000 and that Cromer was trying to obtain $2000 as a partial repayment. Cottom once told Jones that Cromer and his wife are arguing "[p]robably `cause he telling her to give it [the money] to you and she probably wondering where she going to get it from." The jury could have rationally concluded that the large amount of money involved was used to purchase drugs for distribution as opposed to buying drugs for personal use or buying cigarettes for distribution.

In addition, there is a conversation in which Jones is complaining to Cottom that Cromer did not fulfill his duties in distributing drugs to an inmate. Jones said, "Brother [Cromer] ain't take care of that dude, and I ask Brother if he wanted me to take care. . . and he said he was going to do it. . . . Ah, the boy asked me today. And I told him and then I ask him in front of Brother, yesterday I said look, you want me to take care of that Brother?" The conversations also show that Jones cannot decide whether to hand over to Cromer the drug distribution business after Jones leaves BCDC. In mid-December 1997 Jones said, "[W]hen I leave, I just tell Brother to do everything for me," and "I already set that up with a, with Brother on that, does it

7

when I leave you know." By late December, however, Jones said "Look, I ain't gonna be here. I'm trying to go ahead and make quick deals `cause I don't want to leave and then depend on somebody else to do it. . . . That's what I'm saying. And Brother I ain't gonna trust him." Another conversation that reflects Cromer's participation in the conspiracy involves Cromer talking to Cottom about a drug customer named Omar. Cottom is complaining to Jones about having to deal with Omar and tells him that Cromer's wife said that Jones instructed the women to handle Omar together. Cromer then enters the conversation to tell Cottom that his wife has misunderstood Jones's instructions.

Willie Davis's testimony further supports Cromer's conviction. Davis testified that he saw Calvin Bradshaw hand Cromer a package wrapped in clear tape. During this exchange, Davis heard Bradshaw say, "Liddy [Jones] told me to give you your pack, this is yours, Liddy told me to give it to you." Although Davis did not see what was inside the package, the jury could have inferred that the package contained drugs. Such an inference is reasonable given the testimony that Jones and Bradshaw were selling narcotics and the wiretap evidence showing Jones's and Cromer's involvement in the conspiracy. The cumulative impact of the testimony and the conversations renders the jury's verdict as to Cromer sustainable.

3.

The evidence was also sufficient to convict Liles of conspiracy to distribute narcotics. The government's evidence against Liles consisted of wiretapped conversations between Cottom and Liles. In these conversations Cottom is instructing Liles to pick up money and drugs for her, and she makes it clear that she will use the money he picks up to purchase drugs. For instance, Cottom tells Liles she needs him to pick up "them funny cigarettes" and "two hundred dollars" for her. When Liles asks her whether she means "blunts," she says, "Yeah, what they put . . . you know." Another time, after Cottom tells Liles where to make the pick-ups, Liles asks, "Did, um, you talk to um, `Titty?'" Cottom responds, "Yeah . . . if I ain't heard from him by the time ya'll get over here to go do it, I'll just ah, get that ah, the half, you know? . . . Not the half but . . . the quarter." Cottom also said once, "[L]ater on when I get hold of, ah, Rodney [Parham] . . .

8

with the money you got, I'm have to put some more and go get, you know. . . . The reefer. . . . Oh, I don't mean to say that on the phone." Liles responded, "I mean I knew what you were talking about." It is reasonable to assume that the slang words Cottom used were drug terms. There is also a conversation between Cottom and Jones that reveals Liles's involvement in the conspiracy. Cottom says that she sent Liles on a pick-up for someone named Manny. Liles was supposed to collect money but instead the person gave him "[w]hat Bey-Bey had." Because there was evidence that Bey-Bey was a heroin dealer, it is reasonable to assume that heroin is what "Bey-Bey had." All of these conversations support Liles's conviction in this case.

C.

We now move to the issues that only apply to Jones. The first is whether Jones's conviction and sentence are in error because of the Supreme Court's decision in Apprendi v. New Jersey, 530 U.S. 466 (2000). The Apprendi Court held, "Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." Id. at 490. For purposes of 21 U.S.C. § 846, "Apprendi dictates that in order to authorize the imposition of a sentence exceeding the maximum allowable without a jury finding of a specific threshold drug quantity, the specific threshold quantity must be treated as an element of an aggravated drug trafficking offense." United States v. Promise, 255 F.3d 150, 156 (4th Cir. 2001) (en banc). The statutory maximum sentence for conspiracy to distribute marijuana without a jury finding of a specific threshold quantity of marijuana is five years imprisonment; the maximum sentence is ten years imprisonment if the defendant has a prior felony drug conviction. See § 841(b)(1)(D). The jury did not make a finding of a threshold amount of marijuana. Therefore, the maximum term of imprisonment Jones faces is 10 years because he has at least one prior felony drug conviction. As explained in part II.A., the general verdict in this case also limits Jones's term of imprisonment to 10 years, and we are remanding for resentencing so that his sentence complies with this limit. After resentencing, Jones's sentence will also comply with Apprendi.

Jones's second argument is that the district court erred in calculating the drug amount because of its reliance during sentencing on the

9

testimony of Ronald Williams, a BCDC inmate. "Insofar as the proper application of the [Sentencing] Guidelines turns predominantly on one or more findings of fact, we review the district court's findings for clear error." United States v. Williams, 253 F.3d 789, 791-92 (4th Cir. 2001). Except for calling Williams a "shadowy character of dubious qualifications," Jones gives no reason why the district court's factual findings are clearly erroneous. Jones also calls Williams an "expert witness" and claims that the district court failed to follow the rules governing admissibility of expert testimony. Williams, however, was not an expert witness. He was a lay witness testifying about his personal observation of the drug activity at BCDC. See Fed. R. Evid. 701 (explaining that a lay witness's opinion testimony "is limited to those opinions or inferences which are . . . rationally based on the perception of the witness"). Therefore, the district court did not have to treat Williams as an expert witness.

D.

Cromer contends that the government's closing argument deprived him of a fair trial. During the rebuttal portion of its closing argument, the government referred to a part of a telephone conversation between Jones and Cottom in which Jones claims that Cromer owes him $3000. Cromer maintains that this reference is improper because that portion of the wiretap had not been played to the jury during trial, nor had the government mentioned it in the initial portion of its closing argument. In order to establish that the prosecutor's argument "so infected the trial with unfairness as to make the resulting conviction a denial of due process," Cromer must show that: (1) the remarks were improper; and (2) the remarks "prejudicially affected [his] substantial rights so as to deprive [him] of a fair trial." United States v. Wilson, 135 F.3d 291, 297 (4th Cir. 1998) (second alteration in original) (internal quotation marks and citations omitted). In this case, the government's remarks during closing argument were not improper. Although Jones's statement concerning the $3000 had not been mentioned before, the audiotape containing that statement was a trial exhibit and the jury had access to it during its deliberations. Because we find that the remarks were not improper, we do not have to address the prejudice prong of the analysis.

10

E.

Cottom argues that because the jury returned a general verdict, the district court erred in considering the quantity of any drug other than marijuana for purposes of sentencing. Cottom miscomprehends the impact of the general verdict and the sentencing process. As discussed earlier, the general verdict caps Cottom's term of imprisonment at five years, the maximum statutory sentence for a conspiracy to distribute marijuana. However, a defendant's sentence is determined on the basis of all relevant conduct, that is, "all acts and omissions committed, aided, abetted, counseled, commanded, induced, procured, or willfully caused by the defendant." U.S. Sentencing Guidelines Manual § 1B1.3(a)(1)(A) (2000). In the case of "jointly undertaken criminal activity," the sentencing court also considers "all reasonably foreseeable acts and omissions of others in furtherance of the jointly undertaken criminal activity." Id. § 1B1.3(a)(1)(B). "The principles and limits of sentencing accountability . . . are not always the same as the principles and limits of criminal liability." Id. cmt. n.1. Therefore, the district court did not err in considering evidence of heroin distribution by Cottom and her coconspirators in calculating Cottom's sentence, which was set under the statutory maximum.

Cottom also maintains that the forfeiture of her house should be set aside because of the sentencing error. Cottom's sentence, which we hold is not in error, was set pursuant to a base offense level of 20. An offense level of 20 corresponds to a fine range of $7500 to $75,000. See id. § 5E1.2(c)(3). Cottom had approximately $20,000 worth of equity in her house. The forfeiture of the house is commensurate with the fine level. Therefore, we reject Cottom's argument that the forfeiture of her house was improper.

F.

Liles argues that the district court erred in denying his motion to sever his trial from that of his codefendants. We review a ruling on a motion to sever for abuse of discretion. See United States v. Ford, 88 F.3d 1350, 1361 (4th Cir. 1996). Liles maintains that it was improper to indict him along with Jones, Cromer, and Cottom and therefore improper to try him along with them. "Two or more defendants may be charged in the same indictment or information if they

11

are alleged to have participated in the same act or transaction or in the same series of acts or transactions constituting an offense or offenses." Fed. R. Crim. P. 8(b). If the defendants are joined in a single indictment, they may be tried together. See Fed. R. Crim. P. 13. In fact, a joint trial is preferable in such a situation. See Zafiro v. United States, 506 U.S. 534, 537 (1993). In this case, the indictment charged the defendants with conspiracy to distribute marijuana and heroin. As explained in part II.B., the evidence showed that such a conspiracy existed and that Liles participated in it. This conspiracy involved a series of transactions for which Liles could be indicted and tried along with Jones, Cromer, and Cottom. See also Ford, 88 F.3d at 1361 ("For reasons of efficiency and judicial economy, courts prefer to try joint-conspirators together.").

Liles also argues that his motion to sever should have been granted because of the complexity of the case, which made it difficult for the jury to compartmentalize the evidence as it related to the four defendants. Pursuant to Fed. R. Crim P. 14, the district court may order separate trials if it appears that the defendant will be prejudiced by a joint trial. As explained by the Supreme Court, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro, 506 U.S. at 539. Liles fails to point to a specific trial right that was compromised by the joint trial. Although Liles may have played a smaller role in the conspiracy than some of the other defendants, the record gives us no reason to believe that the jury could not sort out the differences between the defendants. Furthermore, the district court instructed the jury to consider each defendant separately and not allow the verdict as to one defendant control the verdict as to another. Such an instruction assists in "cur[ing] any risk of prejudice." Id.

Accordingly, we conclude that the district court did not abuse its discretion in denying Liles's motion to sever.

III.

In conclusion, we vacate Jones's sentence and remand for resentencing in accordance with the statutory maximum for the least-

12

punished object of the conspiracy (distribution of marijuana). In all other respects, we affirm the convictions and sentences of the defendants.

<u>AFFIRMED IN PART, VACATED IN PART, AND REMANDED</u>

13